BOARD OF REGENTS, Plaintiff-Appellee, *v.* HARROLD B. WILSON *et al.*, Defendants—(MILLER-DAVIS COMPANY *et al.*, Defendants-Appellants.)

(No. 73-426;

Second District—April 8, 1975.

28

Peterson, Ross, Rall, Barber, & Deidel, of Chicago (Owen Rall and Peter M. Sfikas, of counsel), for appellants.

John B. Angelo, of Ross, Hardies, Babcock, O'Keefe, & Parsons, of Chicago, and John J. Templin, of DeKalb, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

This is an interlocutory appeal by defendants, Miller-Davis Company and its sureties, who are joined as defendants under their performance bonds wherein they guaranteed plaintiff that Miller-Davis would well and truly perform the work of erecting certain buildings according to the terms and specifications of the contracts. They appeal from the trial court's denial of their motion to dismiss plaintiff's complaint against them. This appeal is pursuant to Supreme Court Rule 308. (Ill. Rev. Stat. 1973, ch. 110A, par. 308.) The question of law certified by the trial court is "whether the four contracts bar any claims by plaintiff except for defects appearing within one year as provided in the respective contracts."

■■ The issue arises from a ruling on defendants' motion to dismiss, therefore all facts well pleaded in plaintiff's complaint must be taken as true.

Between January 20, 1964, and March 1, 1967, the plaintiff and defendant, Miller-Davis Company, entered into four contracts for the construction of eight 12-story residence halls at Northern Illinois University at DeKalb. The total contract price for the eight buildings was $12,970,-391. The buildings were constructed in four successive phases, each phase providing, under a separate contract, for the construction of two residence halls. Final payment under all four contracts was made on or before July 9, 1969.

Precast concrete panels, weighing about 3½ tons each, formed the exterior walls of the residence halls constructed by defendant. On December 18, 1972, one of these panels tore loose from its anchoring and fell to the ground. Plaintiff conducted an investigation to ascertain what had caused the panel to fall and to determine whether other panels were in danger of falling. To check the anchoring of each panel it was necessary for plaintiff to drill through the interior walls of the residence halls. The investigation disclosed that the fallen panel and a number of other panels were inadequately anchored. Plaintiff subsequently had the defects remedied. Its complaint prays for $1,500,000 as damages.

Plaintiff's complaint alleges that the construction contracts were breached by Miller-Davis in 29 specific acts or omissions, all relating to the inadequate anchoring of the panels. These acts or omissions can generally be classified as failure to comply with plans and specifications, faulty workmanship and the use of faulty materials.

Defendants assert that the trial court erred in denying the motion to dismiss the counts of the complaint against them and argue that the four construction contracts precluded plaintiff's claim because the defects did not appear or develop within the 1-year period after final payment.[1]

The four contracts include documents copyrighted and published by the American Institute of Architects (A.I.A.), as well as a general agreement, supplementary general conditions, and construction specifications. The relevant provisions of the first three contracts are entitled, "Correction of Work," "Final Payment," "Damages," and "Guarantee." (Since the provisions of these three contracts do not materially vary, we footnote the provisions of one.)[2] The relevant provisions of the fourth con-

---

[1] Within this opinion, the words "final payment" will be used to also mean "substantial usage or occupancy," "formal acceptance" and/or "substantial completion."

[2] The first three contracts, substantially alike, provide in part:
"Correction of Work
ARTICLE 20
CORRECTION OF WORK AFTER FINAL PAYMENT
The Contractor shall remedy any defects due to faulty materials or workmanship * * *, which shall appear within a period of one year from the date of final payment, * * * *"
* * *

Final Payment
ARTICLE 25
CERTIFICATES FOR PAYMENTS
* * *

No certificate issued nor payment made to the Contractor, nor partial or entire use or occupancy of the work by the Owner, shall be an acceptance of any work or materials not in accordance with this contract. The making and acceptance of the final payment shall constitute a waiver of all claims by the Owner, other than those arising from * * * faulty work appearing after final payment or from failure to comply with drawings and specifications * * *.
* * *

Damages
ARTICLE 31
DAMAGES
Should either party to this Contract suffer damages because of any wrongful act or neglect of the other party or of anyone employed by him, claim shall be made in writing to the party liable within a reasonable time of the first observance of such damage and not later than the final payment, except as expressly stipulated otherwise in the case of faulty work or materials * * *.
* * *

tract are entitled, "Warranty and Guarantee," "Damages," "Certificates for Payment," "Final Payment," "Correction of Work" and "Guarantee." [3]

---

Guarantee
ART. 62 GUARANTEE:
*   *   * (E)ach Contractor shall guarantee all of the work performed under his Contract against defects in materials and workmanship for a period of one (1) year from the date of formal acceptance of the completed project work.

Each Contractor shall, at his own expense, and without cost to the Owner, and within a reasonable time after receipt of written notice thereof, make good any defects in materials and workmanship which may develop or appear during said one-year period *   *   *."

[3] The fourth contract provides in part:
    "4.5 WARRANTY AND GUARANTEE
    *   *   *

4.5.2. The warranties and guarantees provided in *   *   * the Contract Documents shall be in addition to and not in limitation of any other warranty or guarantee or remedy required by law or by the Contract Documents.
                    *   *   *

Damages
7.4 CLAIMS FOR DAMAGES
7.4.1. Should either party to the Contract suffer injury or damage to person or property because of any act or omission of the other party or of any of his employees, agents or others for whose acts he is legally liable, claim shall be made in writing to such other party within a reasonable time after the first observance of such injury or damage.
                    *   *   *

9.4 CERTIFICATES FOR PAYMENT
*   *   *

9.4.4 No Certificate for a progress payment, nor any progress payment, nor any partial or entire use or occupancy of the Project by the Owner, shall constitute an acceptance of any Work not in accordance with the Contract Documents.
                    *   *   *

Final Payment
9.7 SUBSTANTIAL COMPLETION AND FINAL PAYMENT
*   *   *

9.7.5. The making of final payment shall constitute a waiver of all claims by the Owner except those arising from: *   *   *
    .2  faulty or defective Work appearing after Substantial Completion,
    .3  failure of the Work to comply with the requirements of the Contract Documents, *   *   *.
                    *   *   *

Correction of Work
13.2 CORRECTION OF WORK
*   *   *

13.2.2 If, within one year after the Date of Substantial Completion or within such longer period of time as may be prescribed by law *   *   * any of the Work is found to be defective or not in accordance with the Contract Documents, the Contractor shall correct it promptly after receipt of a written notice from the Owner to do so *   *   *."
                    *   *   *

13.2.7 The obligations of the Contractor under this Paragraph 13.2 shall be in addition to and not in limitation of any obligations imposed upon him

■■■ In construing specific provisions in terms of the whole contract, the primary objective is to give effect to the intent of the parties (*Schek v. Chicago Transit Authority*, 42 Ill.2d 362, 364 (1969)), and intent must be determined from the words used. (*Tatar v. Maxon Construction Co.*, 54 Ill.2d 64, 67 (1973).) The construction given the letter of the written instrument is controlled by its spirit and purpose and the terms are to be interpreted so as to subserve and not subvert such intent. (*United States Trust Co. v. Jones*, 414 Ill. 265, 271 (1953); *Hoyt v. Continental Casualty Co.*, 18 Ill.App.3d 599, 601 (1974).) A strict construction that reaches a result different from that intended should not be adopted. (*Harvey v. Rolands of Bloomington, Inc.*, 94 Ill.App.2d 444, 449 (1968).) It is presumed that all provisions of a written contract were inserted for a purpose, since parties do not ordinarily insert meaningless terms into their contracts. The provisions, therefore, must be construed together and, if possible, effect given each one. *Valerio v. R. & R. Construction Co.*, 20 Ill.App.3d 48, 53 (1974).

■■■ In construing a contract, it is also necessary to consider the laws which exist at the time and place of its making. Such laws enter into and form a part of the contract as fully as if they were expressly referred to or incorporated into its terms.

by special guarantees required by the Contract Documents or otherwise prescribed by law.

\*　\*　\*

ART. 32. GUARANTEE:

\*　\*　\* [E]ach Contractor shall guarantee all of the work performed under his contract against defects in materials and workmanship for a period of one year from the date of final acceptance of the completed project work. \*　\*　\*

Each Contractor shall, at his own expense and without cost to the Owner, and within a reasonable time after receipt of written notice thereof, make good any defects in materials and workmanship which may develop or appear during the guarantee period \*　\*　\*.

Guarantees of the Contractor shall be prepared on his letterhead and in substantially the following form:

'_____guarantees_____

(Contractor)　　　　　　　　　　　(Scope of Work)

against all defects in materials and workmanship for a period of_____ from the date of FINAL ACCEPTANCE of the completed work, with the exception that the following items of work are guaranteed from the date, and for the periods of time indicated, in accordance with Contract requirements:

| Item of Work | Date Guarantee Commences | Period of Guarantee |
| --- | --- | --- |
| | | |
| | | |

\*　\*　\*'

Insofar as this Article 32 conflicts with provisions under Paragraph 13.2 of the General Conditions, this Article shall govern."

"This principle embraces alike those [laws] which affect its validity, construction, discharge and enforcement. (Citations omitted.) Contracts are presumed to have been entered into in the light of existing principles of law, (citation omitted) and the existing law is presumed to be a part of every contract, (citation omitted) and contracts should be so understood and construed unless otherwise clearly indicated by the terms of the agreement." (*Illinois Bankers Life Ass'n v. Collins*, 341 Ill. 548, 552-53 (1930).)

See also *Schiro v. W. E. Gould & Co.*, 18 Ill.2d 538, 545 (1960); *Jack Spring, Inc. v. Little*, 50 Ill.2d 351, 361-62 (1972).

■■ It is a basic principle of contract law that parties by an express agreement may contract for an exclusive remedy that limits their rights, duties and obligations. (*United States v. Vander Heyden*, 158 F. Supp. 930, 932 (S.D. Ill. 1958); see also *Jackson v. First National Bank*, 415 Ill. 453, 461 (1953).) The contract, however, must clearly indicate that the intent of the parties was to make the stipulated remedy exclusive. *Standard Oil Co. v. Burkhartsmeier Cooperage Co.*, 333 Ill.App. 338, 348-49 (1948); *Continental Grain Co. v. Fegles Construction Co.*, 480 F.2d 793, 796 (8th Cir. 1973); Annot., 84 A.L.R. 2d 322, 332 (1962).

■■ In each of the first three contracts herein, the "Damages" provision limits recovery of damages to claims made prior to final payment "except as expressly stipulated otherwise in the case of faulty work or materials." This is the general provision controlling claims for damages and the quoted portion excludes claims for faulty work or materials from the final payment limitation. The quotation further refers us to other provisions of the contracts regarding claims for faulty work or material. The specific provisions, which control the general, are "Correction of Work," "Guarantee" and "Final Payment." The "Correction of Work" and "Guarantee" provisions place a duty upon the contractor, after notice from the owner, to correct any defects due to faulty workmanship or materials which may appear or develop within 1 year after final payment. These two provisions do nothing more than establish that for a period of 1 year defendant has a duty to rectify any such defects; the provisions in no way limit plaintiff, after that 1 year, from claiming damages as the result of faulty work or material. The duty imposed upon defendant for the 1-year period carries the corresponding right which allows it to rectify such defects prior to any action being taken by the plaintiff. Neither of these provisions state that they are exclusive remedies available to the plaintiff or that they were in lieu of plaintiff's rights as provided by the "Final Payment" provision. This provision provides:

"No certificate issued nor payment made to the Contractor, nor

partial or entire use or occupancy of the work by the Owner, shall be an acceptance of any work or materials not in accordance with this Contract. * * *

The making and acceptance of the final payment shall constitute a waiver of all claims by the Owner, other than those arising from * * * faulty work appearing after final payment or from failure to comply with drawings and specifications * * *."

As can be seen from the quoted portion, the owner's claim for faulty work and failure to follow plans and specifications survives final payment without the 1-year limitation period found in the other specific provisions. Claims for faulty work or failure to follow plans and specifications under this provision would be limited only by the applicable statute of limitations.

This interpretation is supported by the majority of other jurisdictions that have considered similar contract provisions. (See *Houston Fire & Casualty Insurance Co. v. Riesel Independent School District*, 375 S.W. 2d 323 (Tex. Civ. App. 1964); *City of Midland v. Waller*, 430 S.W.2d 473, 479 (Tex. 1968); *Burton-Dixie Corp. v. Timothy McCarthy Construction Co.*, 436 F.2d 405, 409-10 (5th Cir. 1971); *Continental Grain Co. v. Fegles Construction Co.*, 480 F.2d 793, 796-97 (8th Cir. 1973); *Monroe County Board of Educ. v. Galloway*, —— Tenn. App. ——, —— S.W.2d —— (1974).) Additional support is found in the manual designed for use in interpreting the A.I.A. standard contract document (Parker & Adams, The A.I.A. Standard Contract Forms and the Law 38-39 (1954)) wherein it is stated:

"* * * [I]t does not seem sound to read into this provision [Correction of Work (Art. 20)] an intent to void * * * the clear statement in Article 25 [Final Payment] that 'no certificate issued nor payment made * * * shall be an acceptance of any work or materials not in accordance with this contract.'

The statute of limitations in a given state would determine the duration of the Contractor's responsibility under this broad provision. There would be no reason for the insertion of this provision in Article 25 * * * if the intention were to limit the Contractor's responsibility for defects to the one year period named in Article 20. It seems more reasonable to interpret the provision requiring correction of defects appearing within a year as constituting a specific contractual liability that would be covered by a guaranty bond which would cease to be in effect long before the end of the period established by the Statute of Limitations."

The principal case relied upon by defendant is *Independent Consolidated School District No. 24 v. Carlstrom*, 277 Minn. 177, 151 N.W.

2d 784 (1967). The comment in Sweet, Legal Aspects of Architecture, Engineering and the Construction Process 665 (1970) best summarizes our position in regard to that case.

"Warranty clauses can have unexpected results. In *Independent Con. Sch. Dist. #24 v. Carlstrom*, 277 Minn. 117, 151 N.W. 2d 784 (1967) a contract for the construction of a school contained a provision stating that the contractor would remedy any defects which appeared within a year from the date of substantial completion. Defects traceable to poor workmanship and material appeared more than a year after substantial completion. The court held that the warranty provision constituted the exclusive remedy for subsequent appearing defects, and that the contractor was not responsible for even defects relating to material and workmanship which appeared after the expiration of the one year warranty period.

Warranty clauses generally are not intended to limit the remedy for defective workmanship and materials to those defects which appear within the warranty period. The *Carlstrom* case appears to give the warranty clause such an unintended effect."

We therefore find that the first three contracts do not bar claims for defects that appear more than 1 year after final payment.

■■ The "Damages" provision of the fourth contract herein, unlike its counterpart in the first three contracts, allows claims for damages (for which the faulting party is legally liable) to be made "within a reasonable time after the first observance of such injury or damage." The "Correction of Work" provision provides that the contractor shall correct defects found within 1 year or "within such longer period of time as may be *prescribed by law*." (Emphasis ours.) The "Guarantee" provision provides for the contractor to correct all defects in work and materials which appear within 1 year. It also provides that this provision shall control where there is a conflict with the "Correction of Work" provision. The defendants rely upon this latter proviso to support their claim that the 1-year limitation applies to all defective work. We disagree. Such an interpretation would render section 13.2.7 of the "Correction of Work" provision and other provisions (Final Payment & Damage) entirely meaningless. A proper reading is that in addition to the "General Guarantee," specific guarantees can be included in the "Guarantee" provision in the space provided immediately above the phrase upon which defendants rely. These specific guarantees control the general statements in the "Correction of Work" provision. In the present cause, no specific guarantees were added.

The "Certificates for Payment" and "Final Payment" provisions further provide that final payment shall not constitute an acceptance of work or waiver of claims for work not in accordance with the contract. The "Warranty and Guarantee" provision goes on to expressly provide that the warranties and guarantees provided in this contract "shall be in addition to and not in limitation of any other warranty or guarantee or remedy *required by law* or by the Contract Documents." (Emphasis ours.)

Thus, the fourth contract fails to expressly exclude the owner's common-law remedies, or to limit plaintiff's remedies to those expressly stipulated in the contract. Instead, it specifically includes the plaintiff's common-law remedies *as part of the contract.* By giving effect to each and every relevant provision of the fourth contract, we find that there exist independent remedies for specific performance by the contractor during the 1-year period and thereafter for claims for damages. The latter is clearly not limited to claims that appear within 1 year after final payment, but is instead limited by the applicable statutory period of limitations. We, therefore, find that the fourth contract does not bar claims that appear more than 1 year after final payment. See *City of Momence v. Burnett,* 12 Ill.App.2d 227 (1956).

For the reasons stated, the trial court properly denied defendants' motion to dismiss the complaint and this cause is remanded for further proceedings.

Cause remanded.

GUILD and RECHENMACHER, JJ., concur.