**BAKER–CROW CONSTRUCTION COM-PANY, a corporation, Appellant,**

**v.**

**HAMES ELECTRIC, INC., a corporation, Appellee.**

**No. 48115.**

Court of Appeals of Oklahoma, Division No. 1.

Nov. 23, 1976.

Rehearing Denied Dec. 28, 1976.

Certiorari Denied June 21, 1977.

Released for Publication by Order of Court of Appeals June 23, 1977.

Fagin, Hewett, Mathews & Fagin by Arnold D. Fagin, and Warner E. Lovell, Jr., Oklahoma City, for appellant.

Blevins & York by James B. Blevins, Oklahoma City, for appellee.

ROMANG, Judge:

Plaintiff was the general construction contractor for the construction of an apartment complex at Oklahoma City. Defendant was the electrical subcontractor on the project. This suit is based upon the electrical subcontracts, of which there were three, because the complex was constructed in three phases. Plaintiff alleged that defendant's electrical work failed to comply with City ordinances, codes, rules and regulations, and that plaintiff had to correct the same at an expense of $17,780.15, for which judgment was asked.

After issues were joined, this case proceeded to trial. Plaintiff presented its prima facie case. Defendant demurred to plaintiff's evidence, and the demurrer was sustained. Plaintiff has appealed. Plaintiff's first proposition for reversal, reads:

"The trial court erred in construing the twelve-month proviso as being appellant's exclusive remedy under the construction contracts."

The ruling of the trial judge was based upon a provision in each of the electrical subcontracts which reads:

"Contractor [defendant] shall, at his own cost, amend and make good any defects in his work (whether of workmanship or of materials) which may appear within twelve (12) months after the completion of this Contract. Should Contractor refuse or neglect to amend and make good such defects within a reasonable time after receiving notice requesting such remedial work, then Agent shall be entitled to make good such defective work at the expense of the Contractor."

The trial judge in sustaining the demurrer stated:

"I think that by the terms of this contract, any time within one year after completion that there are defects that they can call upon the defendant who did the work and if he does not do it within a reasonable time, he would be liable for the costs of doing it.

\* \* \* \* \* \*

"I think that the contract was completed as a matter of law when the plaintiff or the plaintiff's assignee took physical possession of these apartment houses and started renting them out and had tenants, and according to the plaintiff's testimony, this was all more than one year prior to July of 1973 when these defects were shown.

"I find no evidence offered by the plaintiff to show that any of the defects complained of were latent or hidden. There was no evidence that any of the defects were buried under the ground or behind any wall or the like, so I am simply holding as a matter of law that these parties entered into a contract and said you've got to complain within one year after completion of defects, . . . . .

"I think the parties can by contract limit the time in which they can proceed against one another for defects.

\* \* \* \* \* \*

"And I think when you draw a contract and say you've got to complain within one year, you are bound by it, . . . ."

Plaintiff states in its brief as follows:

". . . [A]ppellant was notified by the City of Oklahoma City of the substantial and numerous defects and deficiencies in the electrical job performed by appellee, and such notice by the City to appellant was more than one year after the final payment under all the contracts; . . . ."

It is undisputed that no defects were called to defendant's attention and no demand was made upon defendant for correction of its work within one year from final payment on the subcontracts.

This suit was filed within the five year period for bringing suits on breach of contract, so the controlling issue is whether the twelve-month provision should be construed as the contractor's sole remedy for the subcontractor's breach.

The question as stated by defendant is whether plaintiff had to complain to de-

fendant of the defects within one year from the date of completion in order to bring an action for breach within the statutory period of time.

Plaintiff relies heavily upon the case of *Board of Regents v. Wilson*, 27 Ill.App.3d 26, 326 N.E.2d 216 (1975), which arose out of inadequate anchoring of precast concrete panels which formed the exterior walls of residence halls constructed by defendant. The court held that the claim based on defects which appeared more than one year after final payment, was not barred by the one year limitation in the contract. The one year contract provision involved in *Wilson*, reads:

"The Contractor shall remedy any defects due to faulty materials or workmanship * * *, which shall appear within a period of one year from the date of final payment, * * *."

In the *Wilson* opinion the court said:

"It is a basic principle of contract law that parties by an express agreement may contract for an exclusive remedy that limits their rights, duties and obligations. . . . The contract, however, must clearly indicate that the intent of the parties was to make the stipulated remedy exclusive.

* * * * * *

"The 'Correction of work' and 'Guarantee' provisions place a duty upon the contractor, after notice from the owner, to correct any defects due to faulty workmanship or materials which may appear or develop within one year after final payment. These two provisions do nothing more than establish that for a period of one year defendant has a duty to rectify any such defects; the provisions in no way limit plaintiff, after that one year, from claiming damages as the result of faulty work or material. The duty imposed upon defendant for the one year period carries the corresponding right which allows it to rectify such defects prior to any action being taken by the plaintiff. Neither of these provisions state that they are exclusive remedies available to the plaintiff or that they were in lieu of plaintiff's rights as provided by the 'Final Payment' provision.

* * * * * *

". . . [T]he owner's claim for faulty work and failure to follow plans and specifications survives final payment without the one year limitation period found in the other specific provisions.

* * * * * *

"This interpretation is supported by the majority of other jurisdictions that have considered similar contract provisions."

Defendant contends that *Wilson* is distinguishable from the instant case in the following respects: (1) The defects in *Wilson* were hidden and not open to inspection as in the instant case; (2) the contracts in *Wilson* were more extensive; (3) the *Wilson* contracts specifically provided that claims by the owner for faulty work, or failure to comply with specifications, were not waived; (4) the *Wilson* contracts provide that occupancy of the structure does not constitute acceptance of the work; and, (5) the one-year clause in *Wilson* is under the heading "Correction of Work After Final Payment," while the "twelve (12) months clause" in the instant case is under the heading "Standards of Performance."

Based upon our careful examination of *Wilson*, we are convinced that the decision therein did not turn on any of the differences mentioned by defendant.

In *Wilson*, as in the present case, the principal case relied upon by defendant was *Independent Consol. Sch. Dist. No. 24 v. Carlstrom*, 277 Minn. 117, 151 N.W.2d 784 (1967), mentioned on page 221 of *Wilson*, wherein that court quoted the following as summarizing its position in regard to *Carlstrom*:

" 'Warranty clauses can have unexpected results. In *Independent Con. Sch. Dist. No. 24 v. Carlstrom*, 277 Minn. 117, 151 N.W.2d 784 (1967) a contract for the construction of a school contained a provision stating that the contractor would remedy any defects which appeared within a year from the date of substantial completion. Defects traceable to poor

workmanship and material appeared more than a year after substantial completion. The court held that the warranty provision constituted the exclusive remedy for subsequent appearing defects, and that the contractor was not responsible for even defects relating to material and workmanship which appeared after the expiration of the one year warranty period.

" 'Warranty clauses generally are not intended to limit the remedy for defective workmanship and materials to those defects which appear within the warranty period. The *Carlstrom* case appears to give the warranty clause such an unintended effect.' "

The above also expresses the position of this court with respect to the holding in *Carlstrom,* which expresses the minority view.

Another case in point on the issue involved is that of *Houston Fire & Cas. Ins. Co. v. Riesel Ind. School Dist.,* 375 S.W.2d 323 (Tex.Civ.App.1964), wherein the opinion reads:

"The surety next says there was no evidence that the defects for which damages were awarded developed during the one-year guarantee period after final acceptance to which liability under the contract and bond was limited. The provision on which this contention is predicated reads, 'In *addition* to the *specific guarantees* as are required by the several sections of the specifications for the work to be performed thereunder, the contractor shall guarantee, in writing, all of the work to be performed and all of the materials and/or workmanship, for a period of one year from and after the date of final acceptance by the owner, of the completed work.' Any defects in material or workmanship or damage to other work caused thereby 'which may develop within said one-year period,' the contractor was to make good at his expense, and without cost to the owner."

The Texas court held that the "guarantee in writing" did not destroy the contractor's general obligation to faithfully perform the contract in accordance with the specifications, and the court said:

"Whether the proof established that the defects appeared or developed within a year is therefore immaterial to appellee's right of recovery."

In the instant case, the subcontracts provided that the work should be done "in a good and workmanlike manner," and that "final payment shall not be construed to mean acceptance of defective work or improper materials." Paragraph 13 of the subcontracts is entitled "Remedy for Default," and it provides that if the subcontractor shall at any time fail or refuse to supply properly skilled workmen or materials of proper quality, or if he shall default in the performance of any other covenant or condition, and shall fail to remedy such default within three days of notice from the contractor, that in any such event, the contractor may proceed to complete the work and the subcontractor shall pay to the contractor the amount of any damages thus sustained by the contractor. And paragraph 13 ends with the following sentence:

"The foregoing remedy shall be cumulative and not exclusive of any other remedies of Agent (Contractor) or its principal, at law or in equity."

We conclude that the twelve month proviso was not the only remedy the contractor could pursue in enforcing its contractual rights against the defendant subcontractor. In our opinion the twelve month provision falls far short of providing, either expressly or by clear implication, an exclusive remedy. See *Continental Grain Co. v. Fegles Construction Co., Inc.,* 480 F.2d 798 (8th Cir. 1973). The plaintiff contractor is entitled to pursue his common-law remedies under the other provisions of the subcontracts, and to do so within the statutory period of time.

The judgment of the trial court sustaining the demurrer to plaintiff's evidence, is reversed, and this case is remanded for trial on its merits.

Having reached the above decision, we do not deem it necessary to consider plaintiff's second proposition.

REVERSED AND REMANDED.

REYNOLDS, P. J., and BOX, J., concur.