RONALD SCHOENEWEIS, Plaintiff-Appellee, *v.* RAYMOND HERRIN, Indiv. and d/b/a Ray Herrin Construction, Defendant-Appellant.

Fifth District   No. 82—52

Opinion filed December 8, 1982.

Richard J. Day, of William M. Cox Law Offices, of East Alton, for appellant.

Leonard F. Berg, of Bono & Haine, Ltd., of Wood River, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

The plaintiff, Ronald Schoeneweis, hired defendant, Raymond Herrin, a construction contractor, to build a house using plaintiff's plans. Subsequent to moving into the house, plaintiff brought the instant action to recover the cost of remedying alleged defects in the concrete work on the patio, driveway, and basement floor and to recover for an alleged shortage in the size of the house as compared to the area contracted for. Defendant appeals from a judgment by the court in plaintiff's favor for $4,000 plus costs of suit.

On appeal, defendant contends that (1) plaintiff agreed to accept the house "as is," and (2) the amount of the judgment is not supported by the evidence. Defendant seeks either outright reversal, that

damages be reduced to nominal damages, or that the cause be remanded for a new trial as to damages only. Plaintiff's brief states that he "has no objection for a reversal and remand" on the issue of damages; alternatively, plaintiff seeks affirmance.

Plaintiff's ultimate complaint alleged, *inter alia,* that defendant had committed a breach of his agreement with plaintiff by negligently constructing the concrete basement floor, driveway, and patio, and by constructing the house in a size less than that agreed upon. In a second count, the complaint alleged that defendant had failed to construct the house in a good and workmanlike manner, citing the allegedly defective concrete work referred to in the prior count and other defects.

According to testimony adduced at the trial, the parties entered into two written agreements concerning the construction. The first, dated August 16, 1978, stated in pertinent part:

"I, Ray Herrin, agree to build, in a workmanship [*sic*] manner, a house 1206 sq. Ft. on the property owned by Mr. Schoeneweis, for him according to his plans. *** The total cost of this construction will be $37,600.00. [Defendant's signature.] I, Ronald Scheoneweis [*sic*], do agree to pay Ray Herrin $4000.00 upon starting this construction and the remaining $33,600.00 within 30 days of completion upon my satisfaction, and the banks [*sic*] approval of appraisal. [Plaintiff's signature.]"

The second agreement was dated January 5, 1978; however, according to plaintiff, the date should have been 1979. It stated in its entirety:

"The undersigned, Ronald Schoeneweis, hereby agrees to accept the house on lot #57 Illinois Street in South Roxana, built by Ray Herrin Construction as is. And will complete the yard work and other various carpentry work for which the undersigned is entitled to a rebate in the amount of $1,000.00. [Plaintiff's signature.]"

Testimony at trial was, in pertinent part, as follows:

Plaintiff testified that water periodically entered his basement between the wall edges and the foundation; the basement floor was cracked in at least half a dozen places; and the floor was not cracked when he moved in on January 5, 1979. He related that he had attempted to seal the floor with sealing compound and waterproof paint without success. He also testified that the driveway had settled and cracked and was now sloped toward the house, as had the patio, all since he had moved in. Plaintiff stated that during construction he had visited the site daily or every other day and that by January 5,

1979, the parties disagreed so badly that they were not speaking to each other. Plaintiff denied being told by defendant that the driveway should have gravel underlying it and should have been permitted to settle before pouring.

On cross-examination regarding the January 5 agreement, plaintiff replied affirmatively when asked whether defendant had made it clear that he no longer wanted to have anything to do with plaintiff. When asked whether such agreement meant that the parties would not have anything more to do with each other and that defendant was not going to have anything more to do with the house, plaintiff replied that he couldn't say they made that agreement either. Instead, according to plaintiff: "He just wanted me to finish it." On redirect examination, plaintiff testified that he did not think that he was waiving construction defects.

Plaintiff testified that the yard was landscaped (graded) by a small tractor in the summer of 1979.

Defendant testified under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60) as follows: The house as built was only 1,152 square feet. There was no rock base underlying the basement floor or the driveway, but the soil underlying that concrete work had been packed and tamped. He related that plaintiff had refused to allow defendant to put rock in place and let it settle before pouring the driveway; that plaintiff had said he did not trust defendant to come back; and that plaintiff said just go ahead and pour it. Defendant stated his opinion that if the patio and driveway sloped toward the house, they must have settled somewhat and that, if there was a water problem in the basement, it was caused by plaintiff's refusal to allow defendant to grade the yard and plaintiff's failure to do it himself promptly.

Dr. Harry Duffy, a registered professional engineer and director of the civil engineering program at Southern Illinois University-Edwardsville, testified for plaintiff as follows: He inspected plaintiff's house in August 1979 and there was water standing in the basement and the basement floor and driveway were badly cracked. Both the driveway and the patio sloped toward the house. The witness was of the opinion that the driveway and basement floor should have had four to six inches of crushed rock base; the basement floor should have been reinforced and drain tile should have been laid outside the foundation; the driveway should have had more expansion joints; and the driveway and patio should not have sloped toward the house. Proper repairs would require removal and replacement of the basement floor and driveway, and a sump pump should be installed in the

basement or drain tile placed outside the foundation. The patio had already been removed. The witness testified that he measured the house as being 1,155 square feet and that he had not seen the plans or specifications for the house.

Tommy Ross, a concrete contractor, testified that on July 1, 1979, he prepared a written estimate for repairs to the basement floor, driveway, walkway, and stoop, totaling $6,445. Plaintiff's counsel had the written estimate marked as plaintiff's exhibit 17, and the written estimate itself is included in plaintiff's compliance with the trial court's discovery order. However, the record does not indicate that plaintiff ever moved that plaintiff's exhibit 17 be admitted in evidence or that the court ever admitted it.

Harry Mason, a building inspector and zoning administrator, testified as follows: He made "final inspection" of plaintiff's house on May 13, 1979. The patio was cracked and sloped toward the house; the driveway had six major cracks and sloped toward the house; the front sidewalk was cracked; the basement floor had major cracks. The witness was of the opinion that the concrete work should not have cracked that badly that soon.

Defendant, the sole witness in his own behalf, testified as follows: He took the plans provided by plaintiff to city hall and obtained a permit. The permit indicated 1,152 square feet, which figure city hall employees arrived at by examining the plans. The witness told plaintiff that the driveway had to have rock under it and that defendant would pour the driveway after it settled. However, plaintiff said he did not trust defendant to come back and insisted defendant pour the driveway immediately. Defendant was of the opinion that plaintiff's failure to do the yard work promptly permitted water to come in. He stated that the yard should have been graded in January, but plaintiff let it sit all summer. Defendant estimated the cost of fixing the concrete work as follows: the patio, $100 to $125; the driveway $800 to $900; and the basement, $600 for covering the floor with a two-inch layer of grout. The January 5, 1979, agreement was prepared by defendant with the assistance of an attorney who suggested, *inter alia,* the "as is" clause. Defendant explained his understanding of that contract as follows: "I told him [plaintiff] I don't want you to call me back for this and that. Just take the $1,000.00. And he said 'yes.' " Defendant stated: "I thought 'as is' would mean we'd be done with one another."

The trial court explained its judgment in a lengthy memorandum, in pertinent part as follows:

(1) The parties intended the phrase "as is" to refer to the state of

completion of the house rather than a disclaimer of warranties. The court noted that both parties were laymen, and that warranties were not expressly discussed.

(2) While the basement was not built in a good and workmanlike manner, this was not the sole proximate cause of the water problems; plaintiff's failure to promptly do necessary landscaping played a "significant role" in permitting water seepage, resulting in a cracked floor.

(3) The driveway and patio were not built in a good and workmanlike manner. The court found that the driveway would not have been poured in December, an inappropriate time, but for plaintiff's insistence. The court concluded, however, that this did not entirely relieve defendant of his obligation to properly construct the driveway.

(4) Defendant was not at fault for any shortage in size of the house as compared with the size contracted for. The court noted that plaintiff provided the plans and found no evidence that defendant failed to follow the plans.

(5) Plaintiff is entitled to $4,000 as "fair and adequate compensation" for "the damages that are attributable to Defendant" for the basement, driveway and patio. The court noted Mr. Ross' failure to testify as to how he arrived at his repair estimate of $6,445, but concluded that defendant's estimate was "undoubtedly minimized."

Defendant contends that the trial court erred in determining that the parties did not intend to exclude implied warranties in the agreement of January 5, 1979. Defendant urges that the phrase "as is" is commonly used and easily understood, but he acknowledges that there is no direct authority for construing that phrase in the context of a contract for sale of a new residence. Defendant relies upon section 2—316 of the Uniform Commercial Code, which provides that unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is" or "with all faults." (Ill. Rev. Stat. 1981, ch. 26, par. 2—316.) In this regard we note that article 2 of the Code is not applicable to contracts for the sale of real estate. (See Ill. Rev. Stat. 1981, ch. 26, pars. 2—102, 2—105(1).) However, if it were, section 2—316 is of no benefit to defendant because the Uniform Code Comment to section 2—316 states that the "exceptions to the general rule" set forth in section 2—316(3), including exclusion of implied warranties by expressions like "as is," are "common factual situations in which the circumstances surrounding the transaction are in themselves sufficient to call the buyer's attention to the fact that no implied warranties are made or that a certain implied warranty is being excluded." Ill. Ann. Stat., ch. 26, par. 2—316(3), Uniform Com-

mercial Code Comment, at 255 (Smith-Hurd 1963).

Defendant also urges for comparison *Garofalo Co. v. St. Mary's Packing Co.* (1950), 339 Ill. App. 412, 90 N.E.2d 292, and *Hurley v. Frontier Ford Motors, Inc.* (1973), 12 Ill. App. 3d 905, 299 N.E.2d 387. In *Garofalo,* the court held that the phrase "as is no recourse" in a contract for sale of "rusty" cans of tomatoes effectively disclaimed implied warranties as to the condition of the contents of the cans. In *Hurley,* the court held that in light of the provision "All Used Cars Sold 'As Is' Unless Otherwise Indicated Here" in a contract for sale of a used car, the buyer did not have the right to rely upon alleged fraudulent misrepresentations by the seller that the seller would pay the cost of needed repairs. Plaintiff concedes the limited applicability of the above authorities to the instant case.

We now consider whether the phrase "as is" effectively disclaimed defendant's implied warranty of habitability as a matter of law or, alternatively, whether the trial court's conclusion that the warranty was not effectively disclaimed was contrary to the manifest weight of the evidence.

In construing specific provisions in a contract, the primary objective is to give effect to the intent of the parties, as evidenced by the words used. (*Board of Regents v. Wilson* (1974), 27 Ill. App. 3d 26, 31, 326 N.E.2d 216, 219.) The intent of the parties must be determined from the language of their agreement alone where it is not ambiguous; further, contract language is not rendered ambiguous by the parties' failure to agree upon its meaning. (*Harris v. American General Finance Corp.* (1977), 54 Ill. App. 3d 835, 839, 368 N.E.2d 1099, 1103.) While knowing disclaimer of the warranty of habitability is not against public policy of this State (*Colsant v. Goldschmidt* (1981), 97 Ill. App. 3d 53, 56, 421 N.E.2d 1073, 1076), any such disclaimer is strictly construed against the builder-vendor. Further, knowing waiver of this protection will not automatically be implied. In the case at bar, the burden is on the seller to prove that the buyer knew that this implied warranty did not attach to the sale of the new residence. The courts have held that one seeking the benefit of such a disclaimer must show that such was in fact the agreement reached. See *Colsant v. Goldschmidt; Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 588-89, 410 N.E.2d 902, 909.

In the case at bar, the agreement of January 5, 1979, does not refer to any particular implied warranty or to implied warranties in general. Neither plaintiff nor defendant used the terms "implied warranty" or "warranty" or any phrase of like import in testifying at trial. Thus, it appears that neither party was considering implied war-

ranties as such in the context of the agreement of January 5, 1979. However, the parties' failure to expressly resort to these terms of art does not dispose of the instant inquiry. The parties were not lawyers. Presumably they meant something in agreeing to transfer the resident "as is." See *Board of Regents v. Wilson.*

■ The text of the January 5, 1979, agreement was so brief that the "as is" phrase cannot be deemed inconspicuous. However, the consequences of the purported disclaimer are not explained in the text of the agreement, nor is it clear that plaintiff understood that he was waiving defects in workmanship. Therefore, these facts fall short of demonstrating an effective disclaimer of liability for such defects as a matter of law. See *Tassan v. United Development Co.; Herlihy v. Dunbar Builders Corp.* (1980), 92 Ill. App. 3d 310, 317, 415 N.E.2d 1224, 1229.

We have yet to dispose of the issue of whether the trial court's conclusion as to the effect of the "as is" phrase as a disclaimer of implied warranties was contrary to the manifest weight of the evidence. Defendant relies upon the "as is" language of the agreement itself. However, that phrase is merely evidence to support the proposition that the implied warranty of habitability was disclaimed. (See *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 589, 410 N.E.2d 902, 909; *Herlihy v. Dunbar Builders Corp.* (1980), 92 Ill. App. 3d 310, 317, 415 N.E.2d 1224, 1229.) Plaintiff offered a plausible alternative explanation as to the sense in which "as is" was used or intended, *viz.,* that "as is" referred to the incomplete state of construction and relieved defendant from his duty to complete it. This explanation was supported by testimony by both parties that the house was incomplete as of January 5, 1979. While defendant testified as to what significance he attached to the "as is" phrase, neither party testified that defendant's presently proffered interpretation was explained to plaintiff, orally or in writing, at the time of the January 5, 1979, agreement. The consideration recited in the January 5, 1979, agreement, $1,000, indicates that the parties agree that the house still required landscaping and some carpentry. While the trial court did not so state, in our view $1,000 might well be deemed wholly inadequate compensation for the uncompleted work in addition to an agreement to forego the implied warranties which hitherto had attached to the sale.

■ We conclude, based on the facts in the instant case, that the trial court's conclusion that the January 5, 1979, agreement was not an effective disclaimer of defendant's implied warranties was not contrary to the manifest weight of the evidence.

Next, we consider defendant's contention that the evidence does not support the award of $4,000 damages to plaintiff. Defendant argues that the trial court engaged in unwarranted speculation in arriving at that figure because plaintiff's only evidence as to damages was the testimony of Mr. Ross, whose estimate was neither itemized nor characterized as reasonable. Defendant contends that if the trial court found plaintiff to be entitled to damages, only nominal damages should have been awarded. Defendant asks that this court either reduce the judgment for plaintiff to a nominal amount or reverse and remand for a new trial on the issue of damages. Further, plaintiff "agrees with the defendant that the trial court's award of damages was based upon speculation," but urges that damages should have been $6,445, the full amount of Mr. Ross' estimate of costs of repair. Plaintiff's argument on this point concludes:

"[T]he plaintiff has no objection for [sic] a reversal and remand on this issue. In the alternative, there is sufficient evidence in the record to support a damage award at least as great as that set by the trial court."

As the party seeking to recover, it was plaintifff's burden not only to establish that he sustained damages but also to establish a reasonable basis for computation of those damages. (*Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 677, 356 N.E.2d 565, 573; *Ashe v. Sunshine Broadcasting Corp.* (1980), 90 Ill. App. 3d 97, 101, 412 N.E.2d 1142, 1145.) The cases have stated that, if the party having the burden of proof establishes entitlement to damages, yet fails to establish a proper basis from which those damages can be computed, the party is entitled only to nominal damages. (*Brewer v. Custom Builders Corp.*) Further, damages may not be awarded on the basis of conjecture or speculation. (*Alover Distributors, Inc. v. Kroger Co.* (7th Cir. 1975), 513 F.2d 1137, 1141.) However, this court will not disturb the trial court's findings as to damages unless those findings are manifestly against the weight of the evidence. *Pathman Construction Co. v. Hi-Way Electric Co.* (1978), 65 Ill. App. 3d 480, 490, 382 N.E.2d 453, 461.

We do not agree with defendant's contention that plaintiff was entitled to nominal damages at most. Mr. Ross' estimate was not the only evidence as to costs of repairing the concrete work. Defendant testified that repairing the concrete work would cost $100 to $125 for the patio, $800 to $900 for the driveway, and $600 for the basement. While the trial court found plaintiff partly responsible for the defects in the driveway and basement floor, defendant's testimony supplied sufficient basis for the award of some damages. However, we

also reject plaintiff's contention that plaintiff should have been awarded the full amount of Mr. Ross' estimate. That estimate included repairs to the items with respect to which the trial court found plaintiff was partly at fault. We do not find the trial court's conclusion as to plaintiff's partial fault to be contrary to the manifest weight of the evidence.

The above conclusions require us to decide whether the trial court's assessment of damages in the amount of $4,000 was supported by competent evidence. Since Mr. Ross' estimate was not itemized in evidence, there was no basis for the trial court to determine how much of that estimate was attributable to each item without engaging in unwarranted speculation. Plaintiff's failure to elicit an opinion that Mr. Ross' estimate was a reasonable estimate of costs of repair does not render that evidence wholly incompetent, as defendant suggests. Instead, defendant failed to cross-examine Mr. Ross on that point or otherwise raise an issue as to the reasonableness of the estimate. (See *Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 376-77, 413 N.E.2d 47, 55; *Sitnick v. Glazer* (1956), 11 Ill. App. 2d 462, 469, 138 N.E.2d 84, 88-89.) Accordingly, we agree with the parties that the cause should be remanded for a new trial as to damages only.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and this cause is remanded for a new trial on the issue of damages.

Reversed and remanded.

HARRISON, P.J., and KARNS, J., concur.