John E. FERGUSON, IV, as Personal Representative of the Estate of John E. Ferguson, III, Plaintiff–Appellant,

v.

WOZNIAK INDUSTRIES, INC., Defendant–Respondent.

No. 20917.

Missouri Court of Appeals, Southern District, Division One.

Oct. 4, 1996.

Arthur A. Benson, II, Gregg Lombardi, Kansas City, for appellant.

Robert I. Boehm, Chicago, IL, for respondent.

**PREWITT, Judge.**

Plaintiff–Appellant sought damages for breach of contract. The trial court entered summary judgment adverse to Plaintiff, as to two counts of the second amended petition. The court found "no just reason for delay," making the order appealable. *See* Rule 74.01(b). Plaintiff appeals.[1]

Summary judgment is an issue of law which an appellate court reviews de novo on the record submitted. *Slankard v. Thomas,* 912 S.W.2d 619, 622 (Mo.App.1995). The record is reviewed in the light most favorable to the party against whom the summary judgment was entered. *Wimberly v. Furlow,* 869 S.W.2d 314, 315 (Mo.App.1994). The party seeking summary judgment must show a right to judgment based on undisputed facts. *Id.*

John E. Ferguson, III (Ferguson III) owned more than eighty percent of the shares of Ferguson Manufacturing, Inc. On January 10, 1989, he agreed to sell the shares to Defendant Wozniak Industries, Inc., pursuant to a "Stock Purchase Agreement." Exhibit B to that agreement was a "Purchase Money Promissory Note." As provided in the agreement and the note, the stock purchased was pledged as security for the payment provided in the note, $500,-

000.00. Wozniak Industries, Inc. was to pay Ferguson III $500,000.00 over a period of five years. In the event of default on the note, Ferguson III was to receive back the stock.

The agreement provided that Wozniak Industries, Inc. was to "cause" Ferguson Manufacturing, Inc. to pay consulting fees to Ferguson under a pre-existing consulting contract and to maintain Ferguson Manufacturing, Inc.'s net worth at a certain level. It was also to prevent Ferguson Manufacturing, Inc. from going into default on certain loan agreements and to inform Ferguson III prior to selling or disposing of Ferguson Manufacturing, Inc.'s assets.

The second amended petition contended that there was a breach of the terms of the agreement because the net worth dropped below the required amount, the consulting agreement was not paid, Ferguson Manufacturing, Inc. was allowed to default on loans and all of its assets were transferred to a third party without Mr. Ferguson's consent. Count I sought damages for these breaches. Count II sought the same damages for these breaches based on an "Indemnification" clause in the agreement. Other counts are not relevant to this appeal.

Wozniak Industries, Inc. filed a motion for summary judgment contending that Ferguson III's exclusive remedy for breach of the agreement was the return of the stock, as provided in the note. The trial court granted summary judgment on that basis.

■ The agreement provided for the law of Illinois to apply. Missouri law recognizes that the parties may choose the state whose law will govern their contractual rights and duties, so long as the application of the law is not contrary to a fundamental policy of Missouri. *See Tri–County Retreading, Inc. v. Bandag, Inc.,* 851 S.W.2d 780, 784 (Mo.App. 1993). There is no contention here, and we see none, that indicates that Illinois law is contrary to a fundamental policy of Missouri,

---

**1.** John E. Ferguson, III was initially a plaintiff, but following his death the present plaintiff, the personal representative of his estate, was substituted.

and in fact, it appears similar, if not identical, to Missouri law.

■ The parties, of course, may contract for an exclusive remedy that limits their rights, duties, and obligations. *Board of Regents v. Wilson,* 27 Ill.App.3d 26, 326 N.E.2d 216, 220 (1975). For that to occur, the contract must clearly indicate the intent of the parties to make the stipulated remedy exclusive. *Id.* A provision for one remedy does not mean that other remedies are unavailable. *See, e.g., Structural Sales, Inc. v. Vavrus,* 132 Ill.App.3d 718, 87 Ill.Dec. 619, 621, 477 N.E.2d 745, 747 (1985).

■ Respondent refers us to Section 2 of the Stock Purchase Agreement which contains certain procedures and remedies. Section 2(c) provides that Appellant "shall have the right to select among" certain courses of

action with respect to the promissory note should Respondent breach the agreement.

In *Vavrus,* the provision in question stated that the non-breaching party "shall have the right to complete" the contracted work and prorate the payment. 87 Ill.Dec. at 621, 477 N.E.2d at 747. Relying on *Wilson,* the *Vavrus* court found there was "no indication that either party intended the remedy set out [above] to be the exclusive remedy in case of material violation" of the contract. *Id.*

Here, an examination of Section 2 does not reveal any language which clearly indicates that no other remedies are available. There is a remedy provided, but no statement that other remedies are prohibited. Without such a provision, Plaintiff's rights are not limited. Section 2 of the agreement is set forth in full below.[2]

■ Respondent also contends that Section 2 of the agreement makes the remedy in

**2. 2. *Security.***

The obligations owed Seller shall be secured by the following collateral and in the manner hereinafter provided until such time as the Promissory Note and the sums due under the Consulting Agreement (hereinafter defined) shall have been paid in full:

(a) *Pledge of Stock.* Buyer shall pledge all issued and outstanding Shares of the capital stock of Company (except for the Tharp Stock) as security for the payment of the principal and interest under the Promissory Note, the payment of all sums due Seller pursuant to the terms of the Consulting Agreement dated October 7, 1988 between Company and Seller as amended by First Amendment to Consulting Agreement, of even date herewith (the "Consulting Agreement), and the performance of Buyer's other covenants, agreements, and obligations under Section 8 of this Agreement, such pledge to be in accordance with the terms and provisions of the Pledge Agreement, a copy of which is attached hereto as Exhibit D, with all blanks appropriately completed, and shall deposit with Mercantile Bank & Trust, Kansas City, as escrow agent ("Escrow Agent"). At the time of Closing, Buyer shall pledge and deposit with the Escrow Agent a certificate representing Fourteen Thousand Six Hundred Thirty (14,630) Shares of the common capital stock of Company issued in the name of Buyer and representing all of the issued and outstanding stock of Company (except for the Tharp Stock), accompanied by a stock power pertaining thereto which has been endorsed for transfer in blank, the aforesaid certificate and stock power to be held by the Escrow Agent in accordance with the terms and provisions of this Agreement, the aforesaid Pledge Agreement and

the Escrow Agreement, a copy of which is attached hereto as Exhibit E.

(b) *Events of Default.* The following shall be events of default under this Agreement:

(i) A default by Buyer in the making of any payment of any principal or interest under the Promissory Note;

(ii) A default by Company in the making of any payment due under the Consulting Agreement; or

(iii) Buyer's failure to perform, in a timely manner, all of Buyer's covenants, agreements and obligations under the Pledge Agreement, the Escrow Agreement and Section 8 of this Agreement.

(c) *Default Procedures and Remedies.* If any such event of default occurs and remains uncured for a period of:

(i) Ten (10) days following the date upon which Seller gives written notice thereof to Buyer in accordance with Section 15(d) hereof, in the case of payments of interest and/or principal under the Promissory Note or the payment of any sum due under the Consulting Agreement; or

(ii) Fifteen (15) days following the date upon which Seller gives written notice thereof to Buyer in accordance with Section 15(d) hereof, with respect to all non-monetary covenants, agreements and obligations, as the case may be; then

Seller shall have the right to select among the following courses of action: (aa) if the Promissory Note has not been paid in full at the time of such default, Seller shall have the option of electing to accelerate the payment of the Promissory Note; and (bb) if the Promissory Note has been paid in full, Seller shall have the option to immediately pursue his security interest in the shares

the "note" the only remedy available to Plaintiff. The language that Plaintiff relies on in the note is also set forth marginally.[3]

This language provides the remedy for the obligations of the note, that is $500,000.00. It does not, however, provide what the remedy would be for any other breach of Defendant's obligations. Appellant asserts that the documents must be construed together because they were all made as a part of one transaction, citing *McDonald's Corp. v. Butler Co.*, 158 Ill.App.3d 902, 110 Ill.Dec. 735, 740, 511 N.E.2d 912, 917 (1987).

■■■ Contract language is not rendered ambiguous by the parties' failure to agree upon its meaning. *Schoeneweis v. Herrin,* 110 Ill.App.3d 800, 66 Ill.Dec. 513, 518, 443 N.E.2d 36, 41 (1982). Where the terms of a contract are clear the meaning is determined from the language of the agreement. *LaSalle Nat'l Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 144–45 (7th Cir.1996) (applying Illinois law). *See also General Electric Capital Corp. v. Equifax Services, Inc.*, 797 F.Supp. 1432, 1447 (N.D.Ill.1992) (there is no ambiguity if the court can determine the meaning from language used).

The language in the note on which Defendant relies conditions the remedy to that "on this note" or "under this note." It does not purport to be the remedy, or the only remedy, for other breaches by Defendant. The remedy provided in the note was limited to

of stock of Company pledged as security hereunder.

If Seller elects to accelerate the Promissory Note, then the entire amount of principle and accrued but unpaid interest due on the Note shall accelerate and become due and payable in full, and Escrow Agent, upon receipt of notice of such election by Seller, shall promptly give Buyer written notice of such acceleration. If the Promissory Note is not paid in full within fifteen (15) days following notice of acceleration, then the Escrow Agent shall promptly deliver all stock certificates of Company pledged hereunder, together with all stock powers and other documents pertaining thereto, to Seller. If the Promissory Note is paid within the fifteen (15) day period following notice of acceleration, then Escrow Agent shall continue to hold the aforesaid stock certificates and stock powers until such time as the payments due under the Consulting Agreement have been paid in full.

If the Promissory Note has been paid in full at the time of such default, and if Seller elects to proceed to demand delivery of the stock hereunder as a result of such default, Seller shall so notify Escrow Agent, and Escrow Agent, upon receipt of notice of such election by Seller, shall promptly give Buyer written notice of Seller's demand for delivery of the stock pledged hereunder. If the event of default is not cured within fifteen (15) days following notice by Escrow Agent to Buyer of Seller's demand for delivery of the stock pledged hereunder, then Escrow Agent shall promptly deliver all stock certificates of Company pledged hereunder, together with all stock powers and other documents pertaining thereto, to Seller.

Notwithstanding anything hereinabove to the contrary and with respect only to the cure period provided for all non-monetary covenants, agreements and obligations, if the event of default is also an event of default under the Barclays Loan Agreement (as hereinafter defined in section 10(I) hereof), then Seller agrees that Buyer shall have the same time period granted to Company by Barclays Business Credit, Inc. Under the aforementioned Loan Agreement, or which Barclays Business Credit, Inc. Grants to Buyer in the future, within which to cure the event of default hereunder.

**3.** 9. *Non–Recourse Obligation.* Notwithstanding anything to the contrary set forth in this Note or the Pledge Agreement, neither Maker nor the Maker's respective officers, directors, shareholders, heirs, legal representatives, successors or assigns (collectively the "Exculpatated Parties"), will have any personal liability for the payment of the principal of or interest on this Note, and Payee shall look solely to the stock pledged as security for this Note for the indebtedness evidenced by this Note and for the payment or satisfaction of such principal and interest and other indebtedness, and no other property or assets of any of the Exculpatated Parties shall be subject to levy, execution or other enforcement procedure for the satisfaction or the remedies of Payee under this Note or the Pledge Agreement or for any payment required to be made under this Note or the Pledge Agreement or for the performance of any of the covenants or warranties contained herein or therein; provided however, that nothing set forth in this paragraph shall (I) constitute a release or impairment of the indebtedness evidenced by this Note or any other security for said indebtedness, (ii) preclude or limit the right of the Payee to name Maker, or any other person or entity having an interest in the aforesaid stock or otherwise required to be joined therein as a party defended in any action, suit or proceeding for foreclosure with regard to the stock pledged as security for this Note, so long as no judgment in the nature of a deficiency judgment shall be enforced against Maker or such other person or entity except to the extent of the stock and such other security.

collect the amount provided in the note in the event there was a breach.

Construing the documents together is not necessary to interpret the agreement. The relevant terms are clear and indicate that there was no restriction as to Plaintiff's remedies for breaches other than failure to pay the price of the stock as provided in the note. Thus, Count I was not subject to summary judgment.

■ Summary judgment was proper as to Count II. It purported to base a cause of action on the "Indemnification" clause of the agreement. In general, an agreement to indemnify another is an agreement by one person to hold another harmless from loss or damage as may be specified in the agreement or in which the indemnitor promises to reimburse his indemnitee for loss suffered. 42 C.J.S. *Indemnity* § 2 (1991). Under Illinois law, that loss is generally associated with liability to a third person. *See, e.g., Bassick Co. v. Mississippi Valley Erection Co. of Illinois,* 104 Ill.App.3d 517, 60 Ill.Dec. 247, 250, 432 N.E.2d 1146, 1149 (1982); *Magnus v. Lutheran General Health Care System,* 235 Ill.App.3d 173, 176 Ill.Dec. 209, 217, 601 N.E.2d 907, 915 (1992).

In *Magnus,* an Illinois appellate court affirmed a judgment against a party (Buyer) to an agreement who attempted to enforce an indemnification clause against the other party (Seller). The indemnification clause provided that the Seller would indemnify the Buyer for "all costs and expenses (including reasonable attorneys' fees) of any kind whatsoever arising out of or incident to or in connection with ... any claim of any type whatsoever asserted against Buyer by any person ... of any type arising out of or in connection of with (a) any act, conduct, failure to act or omission of Seller." 176 Ill.Dec. at 217, 601 N.E.2d at 915.

The Buyer had incurred expenses in litigating a claim asserted by the Seller, but the *Magnus* court held that "[a]n indemnity agreement is an agreement whereby the indemnitor agrees to protect the indemnitee from claims asserted against the indemnitee by third persons." *Id.* It concluded that the indemnity clause "[did] not include the costs Buyer incurred in defending itself against Seller's claims." *Id.*

Appellant contends that because there is a procedure for "non-third party claims" set forth in the agreement, indemnification may occur directly from Defendant to Plaintiff where no other parties are involved.

Indemnification does not encompass payment of breach of contract damages as sought by Appellant. The presence of the language referred to by Appellant does not preclude the meaning of "indemnification" as provided under Illinois law. The existence of a "non-third party claim" does not mean liability did not arise because of the act of a third party.

We conclude that the SPA's indemnification clause did not include the damages alleged in Plaintiff's breach of contract claim against Defendant.

■ Appellant's remaining two points ask this Court to review the trial court's denial of summary judgment in favor of Plaintiff. There is no appeal from a denial of summary judgment and its denial does not present an appealable issue. *DeCota v. J.E.M. Development Corp.,* 908 S.W.2d 884, 888 (Mo.App. 1995). Those points are denied.

The portion of the summary judgment granting judgment for Defendant on Count II is affirmed. The portion of the summary judgment granting summary judgment for Defendant on Count I is reversed and the cause remanded for the trial court to set aside that portion of the judgment, and for further proceedings consistent with this opinion.

BARNEY, P.J., and GARRISON, J., concur.