MOORHEAD INVESTMENT COMPANY v. JULIUS CARLSON AND ANOTHER.[1]

April 12, 1929.

No. 27,151.

*Edgar E. Sharp* and *John Matt Brendal,* for appellant.
*A. N. Eckstrom,* for respondents.

[1]Reported in 224 N. W. 842.

DIBELL, J.

Action to recover on a note for $4,000 dated December 21, 1921, due in six months, made by the defendants to the First National Bank of Moorhead and assigned by the bank to the plaintiff some years later. A verdict was directed for the defendants, and the plaintiff appeals from the order denying its alternative motion for judgment or a new trial.

A. H. Costain, as receiver of a partnership estate, was the owner of section 28-159-47 in Kittson county. He was a vice president and the managing head of the First National Bank of Moorhead, which as a judgment creditor was interested greatly in the receivership estate. The plaintiff corporation was organized to take over and clean up the real estate holdings of the bank. Its stockholders were principally those of the bank. Its secretary was assistant cashier of the bank.

The defendants, on November 9, 1920, entered into a contract with Costain as receiver to purchase the section described for $30,000. The sale was confirmed by the court on December 6, 1920. The defendants paid $3,000 in cash. They assumed a first mortgage of $16,000 and a second of $6,400, and were to pay $4,600 on March 1, 1921, when it was contemplated that the sale would be closed, together with interest on these three items. These items made the $30,000 purchase money. The defendants made various payments thereafter, charges were made against them for interest, they were charged five and one-half per cent for renewing the $16,000 mortgage, and on December 21, 1921, there was found due from them $4,189.51. They at that time gave their check for $189.51, leaving a balance of $4,000, for which the note in suit was given.

On December 29, 1922, counsel for the receiver wrote the defendants that there must be a settlement or foreclosure would be commenced within ten days. The defendants on January 3, 1923, wrote the receiver that they could not make payment of the contract but offered to surrender without further expense.

Just what occurred afterwards does not appear, but on May 4, 1923, the defendants surrendered their contract and took from the

receiver a lease of the land. The duplicate of the contract held by the defendants was canceled by an indorsement on the back. A receipt as follows, on the letterhead of the bank, was given the defendants:

"Received from Julius Carlson and Alfred Carlson note $4,000—dated May 4, 1923, due 6 months.

"This note is a renewal of note of $4,000 date Dec. 21, 1921, due 6 months for balance due on land contract covering Sect. 28 Township 159 Range 47.

"The aforesaid note is given as an accommodation to The First National Bank of Moorhead the contract having this day been surrendered and will be returned by us without any demand for payment.

"First National Bank of Moorhead
"By A. H. Costain
"V. Pres."

The effect of the cancelation of the contract and the taking of the lease was to return the land to the receiver, to discharge all claim of the defendants, and to relieve the defendants of liability for the purchase price. See Warren v. Ward, 91 Minn. 254, 97 N. W. 886; Olson v. N. P. Ry. Co. 126 Minn. 229, 148 N. W. 67, L. R. A. 1915F, 962; Andresen v. Simon, 171 Minn. 168, 213 N. W. 563; Smith v. Dristig, 176 Minn. 601, 224 N. W. 157.

The $4,000 note of December 21, 1921, was credited to the receivership account of Costain in the First National Bank and was carried among its bills receivable. Apparently no interest was paid upon it. On December 29, 1922, as before stated, the attorney for the receiver wrote the Carlsons insisting upon the completion of the contract, and the Carlsons then wrote the receiver that they could not pay but would surrender. Evidently the Carlsons were thinking of the payment of the $4,000, and that must have been the thought of the attorney for the receiver. As a result the settlement of May 4, 1923, came. Otherwise it does not seem that there was a demand of payment until September 10, 1924, when the note was long overdue.

If the $4,000 note was given for money borrowed by the Carlsons of the bank on December 21, 1921, and applied by them on the purchase price, the defendants at that time had performed in full and were entitled to a deed; and on the same assumption, on May 4, 1923, when the land contract was canceled and the lease taken, they were entitled to a deed. If the note had been executed to the receiver the result might seem clearer but it would not be different. Costain's authority as the head of the bank was complete. The position of the parties was peculiar. Costain was the receiver. He was a vice president and the managing head of the First National. The First National was a creditor interested in the receivership. All negotiations were had in its banking rooms. Perhaps the defendants did not distinguish clearly between the bank and the receiver. Perhaps the bank and the receiver did not. It cannot be questioned that on May 4, 1923, when the settlement was made, they understood that everything was settled. They thought they were giving back the land and were released from further liability. Costain could not have understood otherwise. Costain's rights to represent the bank are so clear that they cannot be disputed. The bank should be held to have understood what he understood; and the transaction of May 4, 1923, whereby the receiver got back the land in which the bank was interested and the defendants rented it, must be held to end the liability of the defendants. The receipt quoted is ambiguous and the purpose of it not clear. Costain did not testify. We are content to hold that as a matter of law the liability of the defendants on the note sued on ended when they gave back the land.

Order affirmed.