**NOVUS EQUITIES CORPORATION,**
petitioner, Appellant,

v.

**EM–TY PARTNERSHIP, etc., et
al., Respondents.**

No. C7–84–1915.

Supreme Court of Minnesota.

Jan. 31, 1986.

George G. Eck, Minneapolis, for appellant.

David L. Graven, Larry M. Wertheim, Minneapolis, Gary L. Meyer, Robbinsdale, for respondents.

SIMONETT, Justice.

This case raises the question whether a vendee's promissory note given as part payment of the purchase price survives cancellation of the contract for deed. We conclude that survivability presents here a question of fact and reverse and remand for trial. We also hold that the trial court

did not abuse its discretion in certifying for appeal its partial summary judgment.

On August 11, 1983, respondent-seller EM–TY Partnership and appellant-purchaser Novus Equities Corporation entered into a contract for deed. The property sold was the Twin Motor Inn on University Avenue in St. Paul, and the purchase price was $2.4 million. Novus, as purchaser, was to pay the purchase price as follows:

1. $200,000.00 cash and Purchase Money Promissory Note for $200,000.00, receipt of both of which is hereby acknowledged;

2. The unpaid balance of the Purchase Price, in the amount of $2,000,000, together with interest at the rate of 10% per annum on the unpaid principal amount thereof from time to time outstanding, shall be paid as follows:

   a. interest only on the unpaid principal balance of the Purchase Price (including the unpaid principal balance of the Purchase Money Note) shall be payable monthly * * *.

The Purchase Money Note given at closing was non-negotiable and due 1 year later, August 11, 1984. The note provides:

This Note is given in accordance with a certain Agreement for Purchase of Motel ("Agreement"), dated August 9, 1983 between the undersigned and the Payee. Interest on the principal amount hereof shall be paid in accordance with the terms of the Agreement.

A rider attached to the contract for deed recites that the note is secured by an irrevocable letter of credit for $200,000, the receipt of which is acknowledged, and further states that if and only if the bank defaults in its letter of credit may the seller have recourse under the contract for deed. In other words, Novus, the purchaser, had no personal liability on its note, the seller's recourse being limited to the letter of credit and the motel property itself. Indeed, a separate provision in the rider provides that seller's recourse for performance of the contract is limited to seller's rights in the property and that purchaser has no personal liability for any obligation under the contract. Further, the rider expressly provides that the contract incorporates by reference the sale agreement made 2 days earlier.[1]

Novus took possession of the motel and made seven monthly payments of $12,500 for a total of $87,500 before becoming delinquent. In May 1984 seller served a 60-day statutory notice of cancellation which, the parties agree, effectively cancelled the contract for deed.

Thereafter, on August 2, 1984, Novus sued EM–TY Partnership, the seller, asking (1) for a declaratory judgment that its promissory note (which by its terms was due in about a week) did not survive the contract cancellation and for an injunction preventing seller from collecting on the letter of credit; (2) for damages under a separate count for alleged misrepresentations by seller; (3) for return of purchaser's $200,000 cash downpayment on the theory of unjust enrichment; and (4) for punitive damages. Novus obtained a temporary restraining order and also arranged for the letter of credit to be extended until the dispute was resolved. Novus then sought and obtained a partial summary judgment in which the trial court ruled that the promissory note did not survive cancellation and could not be collected by the seller. Said the trial court:

1. The sale agreement dated August 9, 1983, contains the same payment provisions as in the contract for deed, but set out in somewhat different fashion, dividing the purchase price into four paragraphs or components:

   (1) * * * $25,000 by personal or corporate check as earnest money * * *;

   (2) $175,000 by certified or cashiers' check at the Closing * * *;

   (3) $200,000 by a promissory note in the principal amount of $200,000, * * * ("Purchase Money Note"), and secured by a Letter of Credit, * * *.

   (4) the balance of the principal amount of the Purchase Price, together with interest at the rate of 10% per annum on the unpaid principal amount thereof from time to time outstanding, shall be payable as follows:

   (a) interest only on the unpaid principal balance of the Purchase Price (including the unpaid principal balance of the Purchase Money Note) shall be payable monthly * * *.

Nowhere in any of the documents is there a recital that the $200,000 note is a part of the down payment. Absent a clear and express statement to that effect, the note is simply an installment note which cannot be collected by the vendors after cancellation of the contract for deed.

To permit immediate appeal from this partial summary judgment ruling, the trial judge, pursuant to Minn.R.Civ.P. 54.02, expressly found no just reason for delay and directed the clerk to enter judgment for Novus on the first count of its complaint. The seller, EM–TY, appealed. The Minnesota Court of Appeals reversed the trial court, ruling that the promissory note secured by the letter of credit was part of the purchaser's downpayment and survived the contract cancellation. *Novus Equities Corp. v. EM–TY Partnership*, 366 N.W.2d 732 (Minn.Ct.App.1985). We granted the purchaser Novus' petition for further review.

## I.

■ On the threshold procedural issue (raised below but not discussed by the court of appeals), we hold that the trial court did not exceed its discretion in certifying its partial summary judgment for immediate appeal.

■ Novus' lawsuit contains multiple claims for relief. Consequently, a partial summary judgment on one of the claims is not appealable, provided, however, that under Minn.R.Civ.P. 54.02 the trial court "may" direct the entry of a final judgment on one of the claims if the court makes "an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." The purpose of the rule is to prevent piecemeal, interlocutory appeals and possible prejudice from the adjudication of less than all claims involved. Nevertheless, the trial judge has discretion under the rule's proviso to allow a piecemeal appeal "if the parties or claims are clearly separable and no prejudice would result from appeal." 2A D. Herr & R. Haydock, Minnesota Practice 8 (1985).

We think a trial judge must be accorded broad discretion in deciding whether an immediate appeal of a partial summary judgment is warranted. Apparently the trial judge in this case was persuaded by seller's argument that because the promissory note was nonrecourse and the letter of credit was limited to $200,000, seller could suffer a substantial loss of interest by a delayed ruling. *See Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10–11, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980). Novus suggests it might lose the chance to use any recovery on its other pending claims as an offset against any liability on the note, but this does not appear to be the kind of prejudice that necessarily precludes an immediate appeal. *Id.* at 9, 100 S.Ct. at 1465. Moreover, now that the court of appeals has reached the merits of the case, considerations of judicial economy dictate that we do, too.

## II.

We now reach the difficult issue: When does a promissory note given by a vendee as part of the purchase price survive cancellation of the contract for deed? To what extent does *Andresen v. Simon*, 171 Minn. 168, 213 N.W. 563 (1927), our only case on the question, provide guidance?

In *Andresen* the $24,000 purchase price was payable "Five Thousand Dollars ($5,000.00) in hand paid, the receipt of which is hereby acknowledged," plus assumption of an underlying mortgage for $8,000, with the balance of $11,000 payable in installments. At closing, instead of cash, the vendees gave a $5,000 note payable in 15 days. When this was not paid, the vendor accepted a new note for $5,000 payable in 3 years, secured by a mortgage on some other land. On acceptance of the new note, the vendor "delivered a duplicate of the contract" to the vendees. Subsequently, the contract for deed was cancelled. Thereafter the seller attempted to collect on the note by foreclosing on the mortgage securing the note. This court framed the issue as whether the evidence sustained the finding "that the note and

mortgage were accepted in lieu of the cash payment required by the terms of the contract." 171 Minn. at 171, 213 N.W. at 564. We said that the evidence established that the seller would not have sold the property without a downpayment, and we affirmed the trial court's decision allowing collection on the note's security. We said that the trial court was not required by the evidence to find that the note was taken for a deferred payment in lieu of a downpayment, and we added, "Money paid or property transferred by the vendee to the vendor is forfeited if the vendee defaults in the performance of the contract and the vendor exercises his right of cancellation." 171 Minn. at 172, 213 N.W. at 564–65.

The court of appeals thought *Andresen* controlled. The court reasoned that a promissory note secured by a letter of credit was "tantamount to cash and therefore falls within the *Andresen* rule." The court also focused on the payment provision in the contract for deed which, as opposed to the same provision in the sales agreement, aggregated the $200,000 in cash and the $200,000 promissory note together in paragraph one, with paragraph two referring to the "unpaid balance of the Purchase Price." Consequently, the court of appeals concluded that the cash and the note specified in paragraph one, the "receipt of both of which is hereby acknowledged," constituted the downpayment.

We think the term "downpayment" is generally understood. It is that part of the purchase price paid by the buyer initially to induce the seller to enter into the contract, thereby conveying equitable title and surrendering possession of the land. It is a kind of entry fee. If the contract is cancelled, the parties understand that the seller keeps this initial payment. The downpayment may also be an incentive to the buyer not to default so as not to lose what he has paid down. Usually the downpayment is money, but it can be other property. A promissory note, of course, is property that can be transferred or paid "down" but a difficulty lies in its equivocal

nature. The note may be considered either as payment in hand or payment deferred. If there is not a "meeting of the minds," either the unsuspecting vendee discovers, upon default, that he has an unexpected, uncancelled obligation, or the unsuspecting vendor discovers he has an illusory downpayment. To ask, in this context, whether the promissory note is a downpayment is a shorthand way of asking whether the parties intended the deferred payments in the note to survive cancellation of the contract for deed.

■ If the parties agree, we see no reason why a promissory note may not be a downpayment or part of a downpayment for a contract for deed. The law, for the most part, leaves parties free to bargain as they choose. We believe, however, if the parties intend a promissory note to be a downpayment, that intent needs to clearly appear. We say this because of the equivocal nature of the promissory note itself, the law's desire to avoid needless uncertainty in real estate transactions, and also because of the strict foreclosure aspects of a contract for deed cancellation. *Smith v. Dristig,* 176 Minn. 601, 224 N.W. 157 (1929). A defaulting vendee is given a relatively short time to remedy a default and when that time elapses there is no redemption period. This is a "drastic" remedy. *Id.* Not only does the vendee lose what payments he has made, but he also loses the land, and, as we said long ago in *Warren v. Ward,* 91 Minn. 254, 257, 97 N.W. 886, 887 (1904), "it seems palpably inequitable and unjust that the vendor could have her land, what has been paid upon it, and likewise enforce further payments * * *." For these reasons, this court has sought to protect the vendee by not only prohibiting the vendor from collecting deferred, not-yet-due installments, but also from collecting past due installments even if reduced to judgment, *id.,* or if covered by a promissory note, *Moorhead Investment Co. v. Carlson,* 177 Minn. 174, 224 N.W. 842 (1929).[2] We hold, therefore,

---

**2.** In this case, seller EM–TY is not claiming it is entitled to collect accrued interest on the $200,-000 promissory note.

that (1) there is a presumption a promissory note is not a downpayment, and (b) the burden of proving a downpayment is on the vendor.

■ There is another concern. Ordinarily, in a contract for deed the downpayment is a relatively small percentage of the purchase price. The more paid down, the more likely the parties may choose a deed and purchase money mortgage arrangement. At some point, it would seem, the amount or length of term of a promissory note might be such that to recognize the note as a downpayment would be a distortion and abuse of the contract for deed's proper role. *Cf. Smith v. Dristig*, 176 Minn. 601, 224 N.W. 157 (1929)(dicta that an agreed-upon provision in a contract for deed designating unpaid installments in default as liquidated damages would probably not be enforced after a contract cancellation).

■ We turn now to Novus' promissory note. We look first to see if the amount of the note is so disproportionate to the purchase price that the note should be denied downpayment status. If the $200,000 note is part of the downpayment, we have a downpayment of $400,000, which is 16.7% of the $2.4 million purchase price. We are not prepared to put down a bright line rule, but in this instance we are willing to say that the proportion involved does not disqualify the note as a downpayment.

We next consider if the record establishes that the parties intended the deferred payment under the note to survive cancellation of the contract for deed. Both parties seem to concede some ambiguity, but each party asserts, even so, that the issue can be decided in its favor as a matter of law on a motion for summary judgment. Purchaser Novus seems to argue for the position taken by the trial judge, namely, that in the absence of a clear and express statement that the note is intended to be part of the downpayment, the note will be held as a matter of law not to be. While expressly designating a note as a downpayment that survives cancellation would certainly be ideal, we are not prepared to say that such designation is the only way the parties' intent may be adequately expressed. On the other hand, seller EM–TY argues that the intent of the parties is irrelevant; that any note delivered at time of closing as part of the purchase price, if not disproportionate in amount to the total purchase price, is a downpayment note. This approach, we think, goes too far the other way. We conclude that the question of whether Novus' note was a downpayment or simply additional evidence of the contract debt is a question of fact. *Andresen* lends support for this proposition. *See also Rathke v. Dexter Horton National Bank of Seattle*, 161 Wash. 434, 297 P. 181 (1931).

In construing contract language where there is ambiguity, resort may be taken to extrinsic evidence of the course of dealing between the parties, having in mind the general purpose of the contract. *E.g., Marso v. Mankato Clinic*, 278 Minn. 104, 153 N.W.2d 281 (1967); *Wick v. Murphy*, 237 Minn. 447, 54 N.W.2d 805 (1952). Here the parties filed affidavits giving, in rather conclusionary fashion, conflicting versions of their negotiations. It does appear, however, that the motel property had not been a successful operation and its purchase and sale represented a business risk to both buyer and seller. It was against this background that the experienced, sophisticated parties negotiated a nonrecourse provision in the contract which protected the buyer while at the same time the contract provided, separately from "the *unpaid* balance of the Purchase Price," the $200,000 note secured by a letter of credit (emphasis added). We agree with the court of appeals that the evidence strongly suggests the note was a downpayment intended to survive cancellation. Nevertheless, since it cannot be said there is no factual dispute, summary disposition is inappropriate. We reverse and remand for further proceedings.

Reversed and remanded.