MONMOUTH PUBLIC SCHOOLS, DISTRICT 38, Plaintiff-Appellant, v. D. H. ROUSE COMPANY, Defendant-Appellee.

Third District   No. 3—86—0208

Opinion filed March 18, 1987.—Rehearing denied April 27, 1987.

McCULLOUGH, J., dissenting.

Richard Whitman, of Stansell, Critser & Whitman, of Monmouth, for appellant.

Donald Adams, of Quincy, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On July 10, 1980, plaintiff, Monmouth Public Schools, District 38, brought suit in the circuit court of Warren County against defendants, D. H. Rouse Company (Rouse) and Hartford Accident and Indemnity Company (Hartford). Plaintiff sought damages for an alleged breach of a contract by which Rouse agreed to replace the roof on the Monmouth High School gymnasium. Hartford was alleged to be the surety upon Rouse's performance bond. Later an amended complaint was filed. Defendants filed answers thereto denying most of the allegations and pleading affirmative defenses of estoppel, laches, illegality, and waiver. Plaintiff denied these allegations. By agreement, the amended complaint was dismissed as to Hartford and the case was heard, on the merits, at bench. On May 31, 1984, the circuit court entered an order finding defendant was not liable. A timely post-trial motion was denied on February 19, 1986. Plaintiff has appealed. We reverse and remand for a determination of plaintiff's damages.

Plaintiff let bids for the roof work on the gymnasium and awarded the contract to Rouse, which was the lower of two bidders.

Rouse agreed to do the work for $24,900. A contract was signed on August 17, 1979, which required Rouse to begin the work on that date and to complete the project by November 14, 1979. Section 8(e) of the supplement to general conditions of the contract provided that time was of the essence of the contract. Evidence presented indicated that plaintiff needed to have the roofing work completed because leaks in the roof had substantially impaired the use of the gymnasium for basketball. The evidence was undisputed that the completion date of November 14, 1979, passed without Rouse's so much as starting any work on the roof although the project architect had given him various warnings. Rouse contends that the architect had granted it an extension of time to perform the work. The evidence on this question was disputed, but the trial court found that no extension had been given. Such a finding was supported by the evidence, and we give deference to that finding.

The substantial issue in the case arises from sections G and H of article III to the supplement to the general conditions of the contract. Section G states:

> "If the contractor fails to correct defective work or persistently fails to supply materials or equipment in accordance with the contract documents, the owner may order the contractor to stop the work, or any portion thereof, until the cause for such order has been eliminated."

Section H then provides:

> "If the contractor *defaults* or *neglects to carry out the work* in accordance with the contract documents or fails to perform any provision of the contract, *the owner may, after seven days' written notice to the contractor and without prejudice to any other remedy he may have, make good such deficiencies.* In such case an appropriate change order shall be issued deducting from the payments then or thereafter due the contractor the cost of correcting such deficiencies, including the cost of the architect's additional services made necessary by such default, neglect or failure. The architect must approve both such action and the amount charged to the contractor. If the payments then or thereafter due the contractor are not sufficient to cover such amount, the contractor shall pay the difference to the owner." (Emphasis added.)

Robert Huff, of the firm designated under the contract as the architect, testified that on November 15, a decision was made to terminate Rouse's contract. The firm then so informed Rouse by telephone, telegram, and letter. The telegram stated that Rouse should consider

the telegram to be notification to stop all work under the contract and that an explanation would follow. A letter which was then sent to Rouse contained these words:

"As stated in your contract the above project was to be completed by November 14, 1979. We have asked you numerous times to supply men and material and have had no positive results.

*As stated in Article III, Paragraphs G and H, we are notifying you to halt all work* in the project. The owner is *exercising his right to finish the project.* We are contacting your bonding company and expect you to pay any additional costs incurred." (Emphasis added.)

Plaintiff did not wait for seven days before reletting the work, as would have been required if it were proceeding under section H, but immediately, on November 15, 1979, relet the contract to the other original bidder, for its original bid of $38,127. No other bids were sought. Plaintiff maintains that it did not have time to seek other bids because of the need to have the gymnasium roof in shape for the basketball season which had already started.

Plaintiff maintains that, despite the wording of the letter, it did not choose to select the remedy set forth in section H of article III of the supplement. It points out section F of article VII of the contract states:

"The duties and obligations imposed by the Contract Documents and the rights and remedies available thereunder shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law."

Plaintiff contends that by telling Rouse it was to halt all work, it was choosing to follow its common law remedy of terminating the contract and mitigating the damages by getting the work done as soon as possible. As time was of the essence of the contract, plaintiff could treat defendant's failure to perform on time to be a total breach of the contract.

However, the trial court ruled that the architect's reference in its letter of November 15, 1979, to the provisions of sections G and H of article III was an election to proceed under those provisions which required a seven-day grace period for the work to be done. The court found from the evidence that Rouse could have done the work in seven days. The court deemed the provision in section H which stated that the owner could complete the contract upon failure of the contractor to perform after seven days' notice and do so "without prejudice to any other remedy he may have" indicated that the owner's ex-

ercise of other remedies was conditioned on first giving the seven-day notice.

■■ ■ We do not agree that the provisions of section H condition the owner's right to exercise remedies not stated in the contract upon the prior giving of seven days' notice and the lapse of that period of time. Plaintiff cites *Structural Sales, Inc. v. Vavrus* (1985), 132 Ill. App. 3d 718, 477 N.E.2d 745, and *Board of Regents v. Wilson* (1975), 27 Ill. App. 3d 26, 326 N.E.2d 216, where courts have held that for contractually stated remedies to be exclusive, the contract must clearly so indicate. Defendant maintains that here, unlike in those cases, the remedy under section H and the remedy of terminating the contract, providing for the reroofing work, and then suing for damages, are inconsistent and thus the contractual remedy should be considered exclusive even though the contract does not clearly so indicate. We need not decide whether defendant was required here to make a clear showing of exclusivity because when section F of article VII of this contract is considered, the contract makes clear that contractual remedies are not exclusive.

More serious is the somewhat related question of whether the letter of November 15 to defendant constituted an election of remedies which would estop plaintiff from the exercise of other remedies. We hold that even if that letter is deemed to intend an election of remedies, plaintiff would not have been bound by the election because defendant did not rely upon the election to its detriment. The leading textual authority on the law of contracts states:

"Election Among Remedies

If a party has more than one remedy under the rules stated in this Chapter, his manifestation of a choice of one of them by bringing suit or otherwise is not a bar to another remedy unless the remedies are inconsistent and the other party materially changes his position in reliance on the manifestation." (Restatement (Second) of Contracts sec. 378, at 228 (1981).)

The "conclusiveness" of an "election" of remedy has been stated to "depend upon the existence of facts sufficient to create an 'estoppel.'" (5A Corbin, Contracts sec. 1220, at 461 (1964).) The foregoing was adopted in *Finke v. Woodard* (1984), 122 Ill. App. 3d 911, 462 N.E.2d 13. (See *Kenny Construction Co. v. Hinsdale Sanitary District* (1982), 111 Ill. App. 3d 690, 444 N.E.2d 510; *Altom v. Hawes* (1978), 63 Ill. App. 3d 659, 380 N.E.2d 7.) The foregoing authorities also indicate that a party may be held to have elected a remedy in order to prevent double recovery. No such problem is involved here.

The existence in the letter to defendant of November 15, 1979, of

a direction not to do any more work makes it difficult to construe that letter as an election of a remedy under sections G and H whereby the defendant would have seven days to perform the roofing work. In any event, as defendant had not started the work and did not take any further affirmative action after receiving the letter, there is no indication that defendant relied to its detriment on any implication in the letter that plaintiff was exercising the remedy of sections G and H. Thus, plaintiff was not estopped from exercising its common law remedy to terminate the contract, provide for the roofing work to be done, and sue for damages resulting from defendant's breach.

We reverse the decision of the circuit court and remand to that court to make a determination from the evidence presented as to the amount of damages to which plaintiff is entitled.

Reversed and remanded with directions.

SPITZ, P.J., concurs.

JUSTICE McCULLOUGH, dissenting:
The plaintiffs elected to proceed under article III, paragraphs G and H, and notified the defendant to halt the work. As the trial court stated, "If the owners chose through it's [sic] authorized representative in the project to give notice under the terms of the contract, then it was required to give him seven days notice before moving onto [sic] the project to finish that not completed by the Defendant. The Plaintiff did not allow Defendant the required seven days to carry out the contract. The evidence shows that defendant was intending to start the project on November 19, 1979, and could have finished the same prior to the expiration of the seven day period." In early November, after conversations between Mr. Devaull and Messrs. Antonochi and Norris of the architectural firm, the defendant dispatched a foreman, Mervin Burgiss, to the jobsite, to look it over, to make a core cut on the roof to be sure what the defendant was removing was what had been indicated to the defendant was on the roof, and also to determine the type of deck.

The trial court found and the evidence supports the finding that the project was to commence on November 19, 1979, and that the defendant could have completed the project within seven days.

It was for the trial court to determine the credibility of the witnesses and the evidence presented. It does not appear that the trial court's order was against the manifest weight of the evidence.

The plaintiff had the option of terminating the contract pursuant to section F of article VII.

As argued by the defendant, the plaintiff could have pursued coexistent remedies as did the owners in *Board of Regents v. Wilson* (1975), 27 Ill. App. 3d 26, 326 N.E.2d 216; *Nitrin, Inc. v. Bethlehem Steel Corp.* (1976), 35 Ill. App. 3d 596, 342 N.E.2d 79; and *Structural Sales, Inc. v. Vavrus* (1985), 132 Ill. App. 3d 718, 477 N.E.2d 745. The plaintiff elected to pursue its remedy through the seven-day notice and should be bound thereby.

The trial court should be affirmed.