Tracy NELSON, et al., Respondents,

v.

Ronald S. McBRIDE, a.k.a. Ronald Scott McBride, Appellant,

Carolyn F. McBride, et al., Defendants.

No. C4-87-381.

Court of Appeals of Minnesota.

Oct. 27, 1987.

James H. Henrichsen, Weber & Henrichsen, Grand Rapids, for respondents.

Kent E. Nyberg, Chalupsky, Nyberg & Hawkinson, Ltd., Grand Rapids, for appellant.

Considered and decided by FOLEY, P.J., and PARKER, and SEDGWICK, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Following a jury trial, the court entered judgment in favor of respondents Tracy and Janet Nelson in the amount of $65,299.69. Appellant's motion to amend the pleadings and motion for a new trial was denied. On appeal, McBride argues his obligation to repay the promissory note, which was given as partial payment of the contract for deed, does not survive cancellation of the contract for deed. We disagree and affirm.

## FACTS

On August 29, 1980, respondents/sellers Tracy and Janet Nelson and appellant/purchaser Ronald McBride entered into a contract for deed. Numerous changes were made to the original contract for deed and an amended contract for deed was signed on February 4, 1982.

The amended contract for deed called for a purchase price of $209,038.97. Although no cash downpayment was made on the contract, appellant and his wife, Carolyn McBride, executed a $30,000 promissory note with an annual interest rate of 12%. The promissory note was secured by real estate owned by appellant and was due and payable on September 1, 1985. The promissory note also provided for an option to extend the note for up to two years and reasonable attorney fees upon default.

Appellant became delinquent on his contract for deed payments and was served with the statutory notice of cancellation in March 1983. On May 1, 1983, respondents agreed to indefinitely extend cancellation of the contract for deed on the condition that appellant pay respondents a percentage, equal to at least $3,000 per month, of the gross receipts from his business.

When appellant failed to comply with the terms of the May 1, 1983 agreement, respondents recorded the cancellation of the contract for deed on July 22, 1983.

Sometime in 1983 appellant's marriage was dissolved. As a result, the parties entered into another agreement on September 30, 1983, where respondents agreed to release appellant's wife from the September 3, 1980, promissory note and mortgage if appellant would execute a replacement promissory note. The replacement promissory note was signed on October 3, 1983.

Carolyn McBride has appeared by letter and stated that she has no interest in the real estate. The United States has also appeared by letter and stated any interest it might have in the real estate is subordinate to that of respondents.

Taxes for the property for the years 1980 through 1986 total $4,400.53. Title to the property has been forfeited to Itasca county, which is subject to redemption until July 1987. Respondents have paid insurance on the property from 1985 through 1986 in the amount of $495. As of October 3, 1986, appellant owed respondents $60,-299.69, which includes principal, interest and insurance.

The trial court ordered judgment in favor of respondents in the amount of $60,299.69, plus $5,000 attorney's fees. Further, the trial court ordered appellant's property, which secured the promissory note, to be sold and application of the proceeds to go toward payment of the judgment.

### ISSUE

Did the trial court err by determining that a promissory note, given as partial payment of the contract for deed, survives cancellation of the contract for deed?

### ANALYSIS

In *Novus Equities Corp. v. EM–TY Partnership,* 381 N.W.2d 426, 430 (Minn. 1986), the Minnesota Supreme Court considered whether a promissory note, given as part payment of the purchase price, survived the cancellation of the contract for deed. In analyzing *Novus,* the su-

preme court found the only precedent was *Andresen v. Simon,* 171 Minn. 168, 213 N.W. 563 (1927).

In *Andresen,* the $24,000 purchase price was payable $5,000 cash, plus assumption of an $8,000 underlying mortgage, with the balance payable in installments. At closing, the purchaser gave the seller a $5,000 note instead of cash. When the purchaser failed to pay the note, the parties executed a new note for the same amount, due and payable in three years, secured by a mortgage on property owned by the purchaser. When the purchaser again failed to pay the note, the seller attempted to collect the note by foreclosing on the mortgage. Discussing *Andresen,* the *Novus* court stated:

> [T]he evidence established that the seller would not have sold the property without a downpayment, and we affirmed the trial court's decision allowing collection on the note's security. We said that the trial court was not required by the evidence to find that the note was taken for a deferred payment in lieu of a downpayment, and we added, *'Money paid or property transferred by the [purchaser] to the [seller] is forfeited if the [purchaser] defaults* in the performance of the contract and the [seller] exercises his right of cancellation.'

*Novus,* 381 N.W.2d at 429 (emphasis added).

In *Novus,* a motel was sold by contract for deed for $2.4 million. The purchaser paid $200,000 in cash and executed a $200,-000 promissory note, which was secured by an irrevocable letter of credit. The *Novus* court held:

> [T]here is a presumption a promissory note is not a downpayment, and (b) the burden of proving a promissory note is a down payment is on the [seller].

381 N.W.2d at 430.

Despite the presumption, the *Novus* court recognized that at some point the amount or length of term of the promissory note might be such that to recognize the note as a downpayment would be a distortion and abuse of the contract for deed's proper role. *Id.* Analyzing whether the promissory note was a downpayment, the

*Novus* court first considered whether the amount of the note is "so disproportionate to the purchase price that the note should be denied downpayment status." *Id.* The court held that a 16.7% downpayment did not disqualify the note as a downpayment. *Id.*

Second, the *Novus* court considered whether the record established that the parties intended the deferred payment under the note to survive the cancellation of the contract for deed. *Id.* The supreme court held that the question of whether Novus' note was a downpayment was a question of fact and, therefore, summary judgment was inappropriate.

Here, however, the trial court found:

> *[I]n lieu of a cash down payment* on said contract for deed, on September 3, 1980 [*appellant* and his wife] *executed* and delivered to [respondents] their *promissory note* in the amount of Thirty-thousand dollars ($30,000.00) with interest compounded annually at the rate of 12 percent.

The trial court's findings of fact will not be set aside unless clearly erroneous and due regard will be given to the opportunity of the trial judge to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01.

The record in this case shows no evidence of any cash downpayment on the contract for deed. It is reasonable to assume that respondents would not have sold the property without a downpayment. *See Novus*, 381 N.W.2d at 430. It is also reasonable to assume the parties intended for the $30,000 promissory note to be the downpayment for the sale of the property. Further, a $30,000 promissory note on a $209,038.97 purchase price would make a 14.35% downpayment, which does not disqualify the note downpayment status under *Novus*. Finally, appellant's replacement promissory note was executed on October 3, 1983, *after* cancellation of the contract for deed was recorded on July 22, 1983. As such, we find respondents have meet their burden of overcoming the *Novus* presumption.

**DECISION**

The trial court properly entered judgment in favor of respondents.

Affirmed.