**In the Matter of Kenneth WITTE, Debtor–Appellant.**

No. 87–1235.

United States Court of Appeals, Seventh Circuit.

Argued March 1, 1988.

Decided March 18, 1988.

Bruce Thiemann, Peoria, Ill., for debtor-appellant.

William E. Stewart, William E. Stewart Law Office, Kewanee, Ill., for appellee.

Before CUMMINGS, WOOD, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Kenneth Witte appeals from a judgment of the district court, reversing in part the bankruptcy court. The district court held that Witte remains liable on a judgment arising out of an installment land sales

contract, notwithstanding the fact that the vendor opted to forfeit the contract and repossessed the property. This case raises an issue of first impression under Illinois law. We reverse.

## I.

On June 25, 1981, Kenneth Witte executed an installment sales contract with Louie Bral and Elizabeth Devlieger under the terms of which Witte agreed to purchase a 160–acre farm in Cambridge Township, Henry County, Illinois for $488,800. More precisely, the terms of the parties' contract called for Witte to make a $24,440 cash down payment, a $24,440 payment on March 1, 1982 and subsequent yearly installments of between $10,000 and $97,760. The agreement expressly provided that half of the payments should be paid to Bral and half to Devlieger. In addition, Paragraph 11 of the contract, the only part of the contract relevant to these proceedings, provided that:

> In case of failure of the Vendee [Witte] to make either of the payments, or any part thereof, or to perform any of the covenants on his part hereby made and entered into, this agreement shall, at the option of the Vendor [Bral or Devlieger], be forfeited and determined and the Vendee shall forfeit all payments made by him on this agreement and such payments shall be retained by the Vendor in full satisfaction of and in liquidation of all damages by him sustained, and the Vendor shall have the right to reenter and take possession of the premises aforesaid.

Witte failed to make his yearly installment payment in March 1984. Consequent-ly, Bral and Devlieger obtained a judgment against Witte in Henry County Circuit Court in the amount of the 1984 payment, $57,291.33, plus the cost of obtaining the judgment. On August 16, 1984, the Henry County Court further ordered Witte to pay Bral and Devlieger the proceeds from the sale of the crops grown that year on three farms that he owned, Witte's share of the proceeds from the sale of 44 head of cattle, rental payments received by Witte flowing from certain farm real estate, and the proceeds from the sale of two used farm tractors. Witte complied with the court order and paid some money over to Bral and Devlieger in partial satisfaction of the May 1984 judgment. Trouble on the farm continued, however, and Witte also failed to make his March 1985 installment payment. Soon after this second default, Devlieger made arrangements with Witte's tenant farmer to retake the farm and to plant the 1985 crop, half the cash proceeds from which Bral admits to receiving.[1] In April, Witte filed for protection under the federal bankruptcy laws. One month later, Bral filed his proof of claim with the bankruptcy court which included: $21,582.44 owed on the 1984 judgment,[2] $45,904.91 due as the March 1985 installment payment, and property taxes of $1,497.18 which Witte should have paid in 1984.

On these facts, the bankruptcy court found that Bral and Devlieger had repossessed the farm in the spring of 1985 when Devlieger made arrangements to plant and harvest the 1985 crop for their benefit.[3] In the opinion of the bankruptcy court, Bral and Devlieger's conduct constituted a forfeiture under Paragraph 11 of the sales contract and hence an election to retake the

---

1. Bral argues in his brief that he should not be bound by Devlieger's unilateral decision to repossess the farm. We disagree. Not only does Bral admit to receiving proceeds from the sale of crops harvested from the farm after Devlieger's alleged "unilateral" repossession, but, as the district court observed, acceptance of Bral's argument that he is not bound by the acts of his co-seller would force a buyer of property from multiple sellers to accept the risk that each seller may seek separate and potentially inconsistent remedies against him in the event of a default.

2. Bral's claim with respect to the 1984 judgment represents his half share of the 1984 installment payment of $57,291.33 minus partial payment of the judgment as the result of Witte's compliance with the state court order.

3. The bankruptcy court's ruling that Bral and Devlieger repossessed the farm *before* they obtained a judgment on the defaulted 1985 installment payment precluded allowance of that portion of Bral's claim attributable to Witte's 1985 default.

property rather than to pursue any claim for damages under the contract. Thus, despite the fact that Bral and Devlieger reduced their 1984 damages claim to judgment prior to repossessing the farm, the bankruptcy court disallowed Bral's entire claim on the grounds that the subsequent election to repossess the property prohibited Bral from also seeking to collect the judgment. "If Bral was permitted to both retake the property and get some benefit of the contract price," the bankruptcy court reasoned, "he would be unjustly enriched."

Bral appealed the bankruptcy court's disallowance of his claim to the district court, claiming that Witte's 1984 and 1985 defaults should be characterized as two separate breaches giving rise in turn to two separate causes of action. Bral further contended that because each cause of action could independently support a claim for contract damages *or* a claim for repossession of the farm, a decision to proceed against the 1984 judgment would not foreclose a subsequent decision to repossess the property in connection with Witte's 1985 default. In contrast, Witte asserted that the bankruptcy court acted properly in disallowing Bral's claim on the basis of the doctrine of election of remedies which, according to Witte, requires a seller suing for breach of contract to elect to pursue *either* the remedy of damages under the contract *or* repossession of the premises. (*See* n. 4, *infra*). Moreover, Witte argued that because Bral and Devlieger were permitted under Paragraph 11 of the contract to retain Witte's predefault installment pay-

ments in the event of a breach or default, the forfeiture of these payments, together with repossession of the farm, constituted full satisfaction of any and all damages to which Bral and Devlieger were entitled.

Acknowledging the difficulty of resolving the parties' dispute equitably, as well as the fact that the issue was one of first impression under Illinois law, the district court agreed with Bral and reversed the bankruptcy court's decision to the extent that the bankruptcy court had disallowed Bral's claim arising out of the 1984 judgment. The district court concluded:

... Mr. Bral's claim for damages arising out of the 1984 breach is not a claim for damages under the sales contract, because Mr. Bral has already obtained a judgment on the contract claim which accrued in 1984. Therefore, Mr. Witte's obligation to pay the remaining amount of the 1984 judgment does not arise out of the operation of the sales contract, but arises out of the court order that established Mr. Witte's liability.

Consequently, the district court allowed Bral's claim on the 1984 judgment, finding nothing inconsistent in permitting Bral to collect on the judgment and to receive the benefits of repossessing the farm.

II.

Were this merely a case in which Bral and Devlieger had attempted to recover money damages against Witte *after* repossessing the farm, case law and the doctrine of election of remedies,[4] as currently ap-

---

4. An 'election' of remedies is the adoption of one of two or more co-existing remedies, with the effect of precluding a resort to the others. *Dobbs, Remedies* § 1.5 at 14 (1973). However, the preclusion of other remedies occurs only if the remedies elected are inconsistent. In Illinois, for one proceeding to act as a bar to another, so far as remedies are concerned, "the remedies must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically assume to follow one without renouncing the other." *Fleming v. Dillon,* 370 Ill. 325, 332, 18 N.E.2d 910, 913 (1938). More recent Illinois cases, however, seem to favor a less abstract approach to the application of the election of remedies doctrine; these cases apply the doctrine primarily on an estoppel basis to situations in which

double compensation for the plaintiff is actually threatened. *See Monmouth Public School District 38 v. D.H. Rouse Co.,* 153 Ill.App.3d 901, 904, 106 Ill.Dec. 608, 611, 506 N.E.2d 315, 318 (Third Dist.1987); *Builders Plumbing Supply Co. v. Zambetta,* 143 Ill.App.3d 188, 191, 97 Ill.Dec. 318, 320, 492 N.E.2d 977, 979 (Second Dist. 1986); *Estate of Wernick v. Macks,* 117 Ill. App.3d 855, 861, 73 Ill.Dec. 276, 280, 454 N.E.2d 20, 24 (First Dist.1983). The instant case, wherein Bral and Devlieger have already repossessed the farm and Bral now seeks an additional remedy, is precisely the type of case in which double recovery is actually threatened. Bral's reliance upon *Altom v. Hawes,* 63 Ill.App.3d 659, 20 Ill.Dec. 330, 380 N.E.2d 7 (Fifth Dist.1978), is therefore misplaced. In *Altom,* resort to the

plied under Illinois law, would clearly bar Bral from successfully pursuing a claim for damages. *See Wollenberger v. Hoover,* 346 Ill. 511, 545, 179 N.E. 42, 57 (1931); *Palen v. Cullom Capital Woodworking, Inc.,* 154 Ill.App.3d 685, 686–87, 107 Ill.Dec. 171, 172, 506 N.E.2d 1062, 1063 (Fourth Dist.1987); *Dahm, Inc. v. Jarnagin,* 133 Ill.App.3d 14, 15, 88 Ill.Dec. 326, 328, 478 N.E.2d 641, 643 (Third Dist.1985); *Cala v. Gerami,* 137 Ill.App.3d 936, 938–39, 92 Ill. Dec. 344, 347, 484 N.E.2d 1199, 1202 (Second Dist.1985); *Hooven v. Woodiel,* 27 Ill. App.3d 467, 470–71, 327 N.E.2d 276, 278 (Fifth Dist.1975). The instant case, however, is distinguishable because Bral reduced his damages claim against Witte to judgment prior to repossessing the farm. Thus, both Bral and the district court concluded that Bral's initial claim for damages merged with his default judgment to become an independent cause of action separate and apart from Witte's second and subsequent breach of the installment contract. Neither the parties nor the courts before which they have appeared in this action have located any Illinois cases directly on point. Although our own research has also failed to furnish a definitive resolution of this issue under Illinois law,[5] a review of related Illinois cases persuades us that the crucial distinction relied upon by the district court in reversing the bankruptcy court—between a "suit" for damages and a "judgment" for damages—is untenable as well as potentially inequitable and thus would not, in all probability, be adopted as the law of Illinois.

■ Remedies for a breach of contract are intended to make the injured party whole by compensating him so that he will be in the same position he would have been in if the contract had been fully performed. *See Corbin, Contracts* § 1122; *Calamari & Perillo, Contracts* § 14–4. Under Paragraph 11 of the contract entered into by the parties, in the event of a breach or default by Witte, Bral and Devlieger had the option to declare the contract forfeited and to retake possession of the premises while retaining any installment payments *already made* as liquidated damages *in full satisfaction of any and all damages sustained.* Thus, the parties' own agreement contemplates that a repossession of the premises operates as a declaration that the parties' contract is terminated.[6] It is precisely because under the terms of the contract repossession signifies the termination of all other previously existing contract rights that a subsequent suit for damages by Bral is foreclosed by the doctrine of election of remedies. *See Cala v. Gerami,* 137 Ill.App.3d 936, 938–39, 92 Ill.Dec. 344, 347, 484 N.E.2d 1199, 1202 (Second Dist.1985); *Benedetti & Sons, Inc. v. O'Malley,* 124 Ill.App.3d 500, 506–07, 79 Ill.Dec. 694, 699, 464 N.E.2d 292, 297 (Second Dist.1984); *see also Continental Sand & Gravel v. K & K Sand & Gravel,* 755 F.2d 87, 93 (7th Cir.1985). Forfeiture of an installment contract for the sale of real estate is an act disaffirming the contract; an action for damages, however, treats the contract as if it were still in force. These two actions are necessarily inconsistent. As the Illinois Supreme Court held in *Wollenberger v. Hoover,* 346 Ill. 511, 179 N.E. 42 (1931):

"inconsistent" remedy alleged to have been resorted to resulted in an unsatisfied judgment and thus subsequent resort to an alternate remedy presented no risk of double recovery.

5. Neither the parties nor the lower courts cite any of the following cases, all of which stand for the proposition that a judgment for an interim installment payment may *not* be enforced after a forfeiture has been declared: *Orzechowski v. Kolodziejski,* 281 Mich. 657, 275 N.W. 722 (1937); *Novus Equities Corp. v. EM–TY Partnership,* 381 N.W.2d 426 (Minn.1986); *Gray v. Mitchell,* 145 Or. 519, 28 P.2d 631 (1934); *Trans West Co. v. Teuscher,* 27 Wash.App. 404, 618

P.2d 1023 (1980); *Zirinsky v. Sheehan,* 413 F.2d 481 (8th Cir.1969) (applying Minnesota law).

6. At oral argument, Bral's counsel argued that repossession of the farm by Bral and Devlieger, without more, did not constitute a forfeiture for purposes of Paragraph 11 of the contract. We have trouble understanding exactly what else would have been required of Bral and Devlieger under Paragraph 11 to demonstrate their intention to forfeit the contract—especially since the right to repossess accrued *only* in the event that the vendors [Bral and Devlieger] opted to treat the contract as forfeited.

If the vendor exercises his option to declare the contract at an end he cannot change his position and thereafter hold the purchaser liable to complete the purchase or pay any part of the unpaid purchase money. The remedy of the vendor by way of cancellation of the contract and the continued liability of the purchaser for the purchase money are totally inconsistent, and the exercise of the former terminates any further liability of the purchaser for the purchase money.

346 Ill. at 545, 179 N.E. at 57.

The district court recognized the inconsistency of an election to repossess followed by a suit for damages; the court found, however, that because Bral was seeking satisfaction of a pre-existing *judgment,* any installment payment he might recover would result not from a barred claim for damages but from "the court order that established Mr. Witte's liability." While this distinction may be of formal significance, we are unpersuaded that simply by characterizing a cause of action for contract damages as a judgment, Bral should be permitted to pursue what amounts to double recovery or, in Witte's words, "[Bral's] having his cake and eating it too." If after Bral repossessed the farm he were later to recover the defaulted 1984 installment from Witte, Bral would obtain a remedy more generous than the one he and Witte agreed to in their contract. Where such a potential windfall is made possible only by giving credence to the distinction between a "suit" and a "judgment," we prefer, as we believe the courts of Illinois would, to disregard this formal distinction in favor of a just and equitable result.

In *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), the Supreme Court reiterated the proposition that bankruptcy courts are essentially courts of equity whose granted powers include the allowance and disallowance of claims. *Id.* at 304, 60 S.Ct. at 244. The Court went on to hold:

The bankruptcy courts have exercised [their] equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done ...

Hence, this Court has held that a bankruptcy court has full power to inquire into the validity of any claim asserted against the estate and to disallow it if it is ascertained to be without lawful existence (citation omitted). *And the mere fact that a claim has been reduced to judgment does not prevent such an inquiry.*

*Id.* at 304–05, 60 S.Ct. at 244 (emphasis supplied). *See also Morrey v. Morrey,* 24 Ill.App.3d 77, 80–81, 320 N.E.2d 503, 506 (First Dist.1974) (quoting *Pepper* ); *Hylek v. Hylek,* 148 F.2d 300, 302 (7th Cir.1945). The bankruptcy court in this case conducted precisely the type of inquiry into Bral's claim that *Pepper* suggests may be appropriate in circumstances such as these and concluded that Bral's judgment claim was for all practical purposes a claim for damages arising out of the contract. As the bankruptcy judge stated, the fact that the claim for damages was reduced to judgment "does not make any difference." To permit Bral to retake the property *and* to receive an element of the contract price he was not entitled to under the terms of Paragraph 11 of the parties' own contract would leave him with more than he actually bargained for. As demonstrated above, Illinois courts have consistently held that the doctrine of election of remedies is properly applicable to prevent just this sort of double compensation.

### III.

For the above-stated reasons, the district court's decision allowing Bral to recover the unpaid balance of the 1984 judgment is

REVERSED.