In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1636

DAWN MARIE ADAMS,

*Creditor-Appellant*,

*v.*

JAMES GREGORY ADAMS,

*Debtor-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:12-cv-130-WTL-WGH— **William T. Lawrence**, *Judge.*

ARGUED SEPTEMBER 9, 2013 — DECIDED DECEMBER 27, 2013

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* In this bankruptcy appeal, creditor
Dawn Marie Adams appeals from the bankruptcy court's
denial of her claim against the estate of debtor James Gregory
Adams, her former husband and business partner. (Since the
parties have the same last name, we refer to them here as
Dawn and Greg.) The state courts of Georgia decided three
times in three final judgments that Greg still owed money to
Dawn after they divorced and unwound their "monster truck"

business. The bankruptcy court heard evidence on the merits of Dawn's claim, though, and denied it as inequitable. The district court affirmed, and Dawn appeals.

Because the decisions of the bankruptcy court and the district court were final orders as to Dawn's claim, we have jurisdiction over her appeal pursuant to 28 U.S.C. §158(d). We find that the issues concerning the validity of Dawn's claim were previously adjudicated in the state courts and that the doctrine of issue preclusion prevented the bankruptcy court from rehearing those issues. Accordingly, we reverse and remand for further proceedings.

### *Procedural History*

Debtor Greg Adams and creditor Dawn Adams had been married for about three years when they were divorced in 2004 by an order of the Superior Court of Jasper County, Georgia. The divorce decree and a 2006 modification required Greg to pay Dawn $61,295, secured by a note and a security agreement in certain trucks and equipment (including a "'Monster Truck' with a Summit Motor installed and currently identified as the 'Annihilator'").

Greg failed to pay the judgment, however, and in 2007 Dawn sued him for breach of the note and security agreement in the Superior Court of Upson County, Georgia, where Greg had relocated. Greg asserted in his answer that the note had been paid in full, but he failed to appear for trial. The Upson County court entered judgment against him on June 27, 2008 and reduced all of Dawn's claims to a single judgment of $97,091. Greg did not appeal from the 2008 Upson County judgment.

While the Upson County proceeding was pending, Dawn also filed a motion for contempt against Greg in Jasper County, where the divorce had been finalized, for his failure to pay the monthly alimony payments that were due under the divorce decree and secured by the note.[1] Greg again filed an answer asserting that Dawn had been paid in full. After a hearing, the Jasper County court found that as of February 17, 2009 (the date of the order), Greg owed $41,096.39 in alimony, as well as past-due life insurance premiums, costs, interest, and attorney fees. The court found Greg in contempt and ordered him to pay the amount due or face incarceration. Greg paid over $50,000 toward that judgment, but a balance on the Upson County judgment remained unpaid.

By the spring of 2010, Greg had moved to Putnam County, Indiana. Dawn then sought to enforce the June 2008 Upson County judgment by registering it in the Putnam Circuit Court. That court also ruled in Dawn's favor, finding that Greg's "general denials/defense[s] are hereby overruled" and that the Upson County judgment was properly registered and entitled to full faith and credit for purposes of collection. Greg did not appeal.

Greg then sought to set aside the judgment in Georgia back in the Superior Court of Upson County. He argued that the Upson County judgment had been fully satisfied by the payment he had made towards the Jasper County contempt

---

[1] We do not know why these cases were not consolidated, or whether the Upson County and Jasper County courts were aware of the seemingly parallel actions before them. Those questions do not affect the issues before us, however.

finding and that Dawn was attempting to perpetrate a fraud. The Upson County court denied Greg's motion, found it "without merit," and ruled in a final order dated February 19, 2010 that Greg owed Dawn a balance of $69,107.31. Again, Greg did not appeal. When Greg again refused to pay, Dawn filed a second contempt proceeding against him in Upson County. Greg appeared and argued that the Upson County judgment had been satisfied by the Jasper County payment and that the Upson County contempt proceeding was barred by res judicata (claim preclusion). The Upson County court rejected Greg's argument, found him in willful contempt, and on April 1, 2011 ordered him to pay $74,612.25 plus attorney fees.

Once again, Greg did not appeal or make payment. Instead, he filed for relief under Chapter 13 of the Bankruptcy Code in the Southern District of Indiana. Dawn filed a Proof of Claim for $74,612.25. Greg objected, arguing that Dawn's claim had "been satisfied through a variety of transactions which have occurred between the parties." Dawn responded that Greg's defenses had been fully and finally litigated in the Georgia state court actions and that his objection to her claim was barred by preclusion principles. The bankruptcy court sided with Greg and rejected Dawn's claim. In spite of the three final and unappealed rulings against Greg, the court said: "I can always hear what the value of a claim is." The bankruptcy court heard Greg's argument that the state courts had not properly credited him with certain payments and that the agreements underlying the judgments had been obtained under duress. The bankruptcy court then rejected Dawn's claim, stating:

> I'm going to solve the problem by letting the Chapter 13 continue, and denying the claim, because I don't know whether the claim has really totally been paid in full, but it's no $69,000 claim. And I see on the claim that the—that all of the notices go out to … Sheridan, Wyoming and … Monticello, Georgia. I've never seen this…Dawn Marie Adams, and her claim is denied. I note that on Exhibit 21…is a money order for $51,000, and after you take all those exhibits and add them up, what's submitted here was well over $200,000. And I couldn't quite determine whether that included the $51,000 or not, but there have been thousands—over—there's been over $250,000 paid in this case, no question about it, for a marriage that was about 28 months.

Dawn appealed the bankruptcy court's ruling to the district court. The district court affirmed, finding that the bankruptcy court had the power to inquire into the validity of Dawn's claim and that she had failed to prove her claim by a preponderance of the evidence. *Adams v. Adams*, 2013 WL 752928, at *3–4 (S.D. Ind. Feb. 27, 2013). Dawn appeals.

*Analysis*

Dawn Adams argues that the bankruptcy court was precluded from rehearing Greg's defenses pursuant to the doctrine of issue preclusion. We agree. Accordingly, we reverse for further proceedings.[2]

---

[2] Because we find that the bankruptcy court's reconsideration of the state

(continued...)

Whether Greg's various defenses to Dawn's claim against his bankruptcy estate were litigated and resolved in the Georgia state courts, as required for application of issue preclusion, is a question of law that we review *de novo*. *Reeves v. Davis (In re Davis)*, 638 F.3d 549, 553 (7th Cir. 2011); *Tidwell v. Smith (In re Smith)*, 582 F.3d 767, 777 (7th Cir. 2009) (appellate court applies the same standard of review that the district court did, examining bankruptcy court's determinations of law *de novo* and findings of fact for clear error).

Dawn's claim against Greg's bankruptcy estate is supported by several judgments of the Georgia state courts that culminated in the Upson County court's judgment of April 1, 2011 that Greg owed Dawn $74,612.25. In the Georgia state courts, Greg raised several defenses to Dawn's suits, including that he had not been credited for payments he had made toward what he owed and that the obligations underlying the judgments were procured by duress and fraud. Those arguments, predicated on the argument that the Georgia state court decisions in Dawn's favor were wrong, were heard and rejected by the Georgia courts.

Issue preclusion principles apply to prevent the relitigation of issues in bankruptcy proceedings, just as they do in other

---

[2] (...continued)
court judgments was barred under issue preclusion, we need not address Dawn's alternative argument based on claim preclusion (res judicata). We reject her reliance on the *Rooker-Feldman* doctrine, which challenges the bankruptcy court's subject matter jurisdiction. The bankruptcy court had jurisdiction over Greg's bankruptcy estate under 28 U.S.C. §1334, and Dawn submitted her claim to that court's jurisdiction.

cases. See *In re Bulic*, 997 F.2d 299, 303–04 (7th Cir. 1993) (applying issue preclusion to prevent debtors from relitigating issues decided by Indiana state court); see also *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991) ("Our prior cases have suggested, but have not formally held, that the principles of collateral estoppel [issue preclusion] apply in bankruptcy proceedings under the current Bankruptcy Code …. We now clarify that collateral estoppel [issue preclusion] principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). Dawn argues that the bankruptcy court erred by failing to apply issue preclusion here.

To determine whether issue preclusion applied, we look to the preclusion law of the state where the judgment was rendered. 28 U.S.C. §1738; *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–82 (1982). Georgia preclusion law applies here.

Under Georgia law, the doctrine of issue preclusion, also known as collateral estoppel,

> precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Like res judicata [claim preclusion], collateral estoppel [issue preclusion] requires the identity of the parties or their privies in both actions. However, unlike res judicata [claim preclusion], collateral estoppel [issue preclusion] does not require identity of the claim—so long as the issue was determined in the previous action and there is

identity of the parties, that issue may not be re-litigated, even as part of a different claim.

*Shields v. BellSouth Advertising & Publishing Corp.*, 545 S.E.2d 898, 900 (Ga. 2001), quoting *Gwinnett County Bd. of Tax Assessors v. General Electric Capital Computer Svcs.*, 538 S.E.2d 746, 748 (Ga. 2000).

Here, the Upson County court entered judgment against Greg not just once but three times, though once would have been enough to support issue preclusion. With each judgment, the Georgia state court heard and rejected Greg's defenses, finding that he was granted all credits he was due and that his obligation to Dawn was not procured by fraud or duress. The bases of Greg's objection to Dawn's claim against his bankruptcy estate thus are identical to the defenses that the state court considered and rejected. The parties and the issues are identical, and under Georgia law issue preclusion applies.

We find this case indistinguishable from *In re Bulic*, 997 F.2d 299, 303–05 (7th Cir. 1993), in which we found that issue preclusion applied in a bankruptcy proceeding to foreclose the bankruptcy court's reconsideration of a state court's prior judgment that the bankruptcy debtors owed their creditor civil damages. The debtors argued before the bankruptcy court that the creditor's claim against their bankruptcy estate was based on a state court judgment that had been procured by fraud, deceit, and perjury. *Id.* at 303. They argued that the bankruptcy court should have re-examined the validity and amount of the creditor's claim under its general equitable powers. We found that reliance on "general equitable principles, independent of the [bankruptcy] code, is insuffi-

cient." *Id*. at 304, citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). The bankruptcy court's equitable powers were limited by 28 U.S.C. §1738, requiring that state court judgments be given full faith and credit in the federal courts as they would in the state that issued them. Because the Indiana courts would have found the state court judgment in the creditor's favor precluded further litigation of the issues decided in the state court leading to the underlying judgment, the bankruptcy court was also required to preclude further litigation of those issues.

Though there are a few narrow exceptions to the application of issue preclusion in bankruptcy cases, Greg does not argue that any of these exceptions apply. He does not argue, for instance, that the Upson County court lacked jurisdiction to hear Dawn's suit. See *Bulic*, 997 F.2d at 304–05, quoting *Heiser v. Woodruff*, 327 U.S. 726, 736 (1946) ("Undoubtedly, since the Bankruptcy Act authorizes a proof of claim based on a judgment, such a proof may be assailed in the bankruptcy court on the ground that the purported judgment is not a judgment because of want of jurisdiction or because it was procured by fraud of a party."). He also does not argue that Dawn procured the Upson County judgment by fraud on the court. *Bulic*, 997 F.2d at 305 (distinguishing fraud on the court in *Heiser* from previously-litigated fraud on a party: "the only allegations of fraud were not of fraud upon the court, but of perjury at trial and coercion in obtaining the promissory notes. Thus the only issues of fraud…were fully litigated and decided by the state court judgment."). Greg argues only that the Upson County court's order is silent concerning his defenses, so "whether those issues were 'actually litigated and adjudi-

cated' is uncertain." Georgia courts, however, apply issue preclusion both when an issue was actually adjudicated and "when an issue necessarily had to be decided in order for the previous judgment to have been rendered." *Allen v. Santana*, 695 S.E.2d 314, 317 (Ga. App. 2010), quoting *Waldroup v. Greene County Hosp. Auth.*, 463 S.E.2d 5, 7 (Ga. 1995). Greg's defenses—regarding credits toward the balance he owed and whether the underlying obligation was procured by duress—necessarily had to be decided for the Upson County court to reach its judgment.

Greg also argues that state law preclusion principles are secondary to the bankruptcy court's interest in ensuring that a bankruptcy claimant does not receive a windfall, relying on *In re Witte*, 841 F.2d 804 (7th Cir. 1988). But *Witte* is inapposite, and Greg's attempt to expand it would amount to a broad command to bankruptcy courts to allow relitigation of issues and claims already resolved by other courts. The creditor in *Witte* had repossessed the debtor's farm. Yet, the creditor attempted also to pursue a claim against the bankruptcy estate based on the debtor's missed payments toward an installment contract on the farm. We rejected that attempt on the ground that the creditor had made an election of remedies in the state courts by repossessing the farm, so the creditor could not also seek payments under the parties' installment contract. See 841 F.2d at 808. Had the creditor been permitted to pursue his claim, he would have received what would have amounted to an inequitable double recovery.

Here it is undisputed that between the time of the final Upson County judgment in 2011 and Greg's bankruptcy petition, Greg did not pay Dawn any amounts toward the

Upson County judgment. Dawn seeks in the bankruptcy only what the Upson County court determined she was owed, not the sort of duplicate remedies that were sought in *Witte*.

In sum, though Greg Adams had the opportunity to appeal the Georgia state court judgments, he did not avail himself of that opportunity. Instead, he filed for bankruptcy, but that is not a substitute for timely appeals of the state court judgments. The doctrine of issue preclusion (collateral estoppel) bars him from using the bankruptcy system to have his defenses reheard despite the state courts' rejection of those defenses.

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.